## OTERI v. SCALZO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 166. Argued April 8, 1892. — Decided May 16, 1892.

A bill in equity set forth the making of a partnership between the plaintiffs S. and R. and the defendant O., each to contribute $5000. It charged fraud, misappropriation of money and mismanagement on the part of O.; that he had vilified and traduced them, for which they reserved their right of action, and it prayed (1) for a receiver; (2) that the $15,000 capital so contributed should be paid into court; (3) for an injunction restraining O. from using the partnership name, etc.; (4) for a dissolution. The cause was referred to a master to take proof and report. The master found that there had been violations of the partnership agreement by the plaintiffs in not paying up their contributions to the capital at the times agreed upon and by O. in various ways set forth,

but that these had been condoned in November, 1884, the plaintiffs paying up their capital in full; that the partnership therefore was to be regarded as continuing uninterruptedly from July 1, 1884, to February 2, 1885, when O. was called to answer in the state court the suit of his co-partners for its dissolution, from which time it was to be regarded as dissolved; and that the plaintiffs had incurred expenses on behalf of the firm amounting to $2538.52. On the coming in of this report, it appearing that R. had assigned all his interest in the suit to S., the court decreed that S. for himself, and as subrogee of R., recover from O. $10,000, with interest; that in other respects the report be confirmed; and " that the complainants' bill of complaint be dismissed without prejudice to their right in some other form of action, as they may be advised, to prosecute the matter of defamation of character set forth in the bill of complaint."
*Held,*
(1) That equity has jurisdiction, where a person has been induced, by fraudulent representations, to enter into a partnership, to rescind the contract at his instance, and put an end to it *ab initio;*
(2) That if the case, upon the evidence, did not entitle complainants to a return of their capital, and to be placed in the same situation, as far as practicable, as if they had never entered into the partnership, but did authorize the ordinary decree for a dissolution and accounting, relief could be awarded in the latter aspect, even though the bill were not framed with precision, in the alternative, for a cancellation or for a dissolution and accounting; and that if the specific prayer were insufficient, such a decree could be maintained under the prayer for general relief, since it would be conformable to the case made by the bill;
(3) That the Circuit Court did not err in rendering a decree at variance with the conclusions of the master (*Kimberly* v. *Arms,* 129 U. S. 512, distinguished);
(4) That the evidence did not furnish sufficient ground for decreeing that complainants are entitled to the return of their capital, within the principle of the rule which has sometimes been applied in such cases;
(5) That the master was correct in holding that the preponderance of evidence was to the effect that O.'s action early in October, in regard to continuing the business in his own name, was condoned, and the difficulties between the partners adjusted for the time being;
(6) That the case was one for an accounting rather than necessarily for a return of capital; and that complainants should not be reinstated at defendant's expense in the same position as if they had not entered upon an enterprise which turned out to be unfortunate.

THE court stated the case as follows: 

Vincenzo Scalzo and the firm of Randazzo & Di Christina,

composed of Vincenzo Randazzo and Antonio Di Christina, aliens, filed their bill of complaint against Joseph Oteri, a citizen of the State of Louisiana, in the United States Circuit Court for the Eastern District of Louisiana, June 11, 1885, alleging that on June 24, 1884, complainants entered into a contract of copartnership with defendant to carry on a general commission business and import fruits from Europe, as set forth, under the firm name of Joseph Oteri & Co.; that Scalzo, Di Christina and Oteri went to Europe thereafter in the summer of 1884 to make arrangements for such copartnership, and after various contracts had been made in the firm name, Scalzo was authorized by his copartners to remain a longer time to make additional contracts, which he did; and that thereafter consignments under said contracts coming to Joseph Oteri & Co. were declined by Oteri against the protest of complainants, who were obliged to care for and protect the same. It was further averred that on October 7, 1884, defendant, in violation of the contract of copartnership, "(and with malice, without cause, probable or otherwise, and in bad faith, for which orators reserve their action for damages,)" after said contracts had been made in good faith for the firm and before any partnership assets or capital had been used, wrote to various parties in Italy that all contracts made for the firm should enure to his private benefit, and he would not recognize his firm therein; that Oteri had refused to make or cause to be made, as the general manager of the affairs of the firm, monthly trial balances as agreed upon; notwithstanding complainants' demand; that defendant had vilified and traduced their character and injured their credit and business reputation, and refused to carry out contracts for the firm, made with his knowledge and consent; that he held in his hands complainants' money amounting to $10,000, and refused to return the same, although duly demanded; and that "they are entitled to be refunded their said capital with legal interest from the 24th day of June, 1884."

The bill further alleged that, apart from the acts of the defendant in refusing various consignments made to the firm under their contracts in Europe, they were not aware until

a short time since of his fraudulent act in declining and refusing to carry on the contract of copartnership. Complainants further set up misconduct as to a cargo, in respect of which defendant declined to attend to the interests of the firm, and involved complainants in loss and damage to the consignors in a large sum, as they were obliged to protect the consignment and save themselves from further loss, the proceeds being paid over to Oteri for the benefit of the consignor. Complainants charged that they were ignorant as to the partnership affairs; that defendant declined to give any knowledge of or concerning the same; that defendant had converted the funds of complainants to his own use, and had not held the same to the credit of the partnership; and that the capital should be deemed to be taken as a part of the assets of the partnership liable to the claims of the creditors thereof, if any existed, or be refunded to complainants with interest, if there were no creditors. Complainants then prayed as follows: " 1. That a receiver may be appointed to take charge of all partnership books and papers and accounts, goods, and effects, and to collect the debts due thereto, and to preserve and dispose of the same under the direction of the court. 2. That said Joseph Oteri may be required to bring into this court, to be deposited to the credit of this cause, the aforesaid sum of fifteen thousand dollars and such other sum as may be in his hands arising from profits thereof or thereon, either in the business of said copartnership (if any) or from the use thereof by said Joseph Oteri. 3. That the said Joseph Oteri may by injunction be restrained from using the name of said copartnership, negotiating any bill or note in said copartnership name, or contracting any debt whatsoever on account thereof, or in any manner intermeddling therewith. 4. That said partnership may be decreed to be dissolved as if the same had never been made, by reason of the acts of said defendant; that an account of its business may be taken under the direction of this court, and that its legal liabilities may be paid and charged against the said Joseph Oteri, and that the capital of your orators, with interest, be restored to them in the premises or otherwise at the discretion of the court; " and for general relief.

Defendant filed a general demurrer, which was overruled by the court, and thereupon filed his answer, to which was attached a certified copy of the partnership act. Defendant admitted that Scalzo, Di Christina and himself went to Europe, in furtherance of the partnership business, but denied that Scalzo was authorized to make contracts, and averred that if he made any they were unauthorized by the firm, and not binding upon it or the defendant. He denied refusing to accept consignments coming to the firm, except that, he refused to recognize or to be bound by a contract made by Scalzo with his brother in Sicily to ship fruit to the firm, which contract. Scalzo had no right or authority to make; and denied that he wrote to Italy as alleged, or that monthly balances had not been furnished, or that he had vilified and traduced complainants, or converted their money, or involved·them in loss and damage in respect of the sale of a particular cargo. Defendant also denied that complainants were not aware of how the partnership funds were invested, and alleged that books of account were kept which were always open to the examination of complainants, and he annexed the last trial balance from .the books; a statement of the assets and liabilities of the firm; a statement of the profit and loss account; and a statement of what was due to each partner, all as of the first day of June, 1885. Defendant averred that since June 1, 1885, and for a long time prior thereto, he had transacted no business for the firm on account of complainants having sued for a dissolution February 4, 1885; and he alleged that the statements annexed correctly exhibited the state of the affairs of the firm at their date.

These statements showed cash on hand $3517.26, after deducting an outstanding liability of $140, and uncollected assets to the amount of $5029.39, including the note of one Zuccas for $2320.75; expenses, $3542.98, and other items of profit and loss, resulting in a loss of $2658.74. Oteri was credited with $5000 and a cash item of $74.61, and debited with cash drawn, $1465.07; one-third of loss, $886.24; one-third of assets uncollected, $1676.46; and a balance of cash due him of $1046.84.

Scalzo was credited with $5000, and cash, $1026.93; and charged with cash drawn, $2197.33; one-third loss, $886.24; one-third uncollected assets, $1676.47; and a balance of cash due him of $1266.88.

Randazzo and Di Christina were credited with $5000 and a cash item of $15; and charged with cash drawn, $1248.75; one-third loss, $886.25; one-third assets uncollected, $1676.46; and a balance of cash due them of $1203.54.

The act of copartnership was annexed, signed by the parties and stating that they appeared before a notary public, and " declared that they hereby agree to enter into a copartnership for the purpose of carrying on a general commission business and the importation of fruit from Europe and for all matters and things thereto appertaining under the following stipulations and conditions, to wit :

"First. The partnership is to be carried on under the firm name of Joseph Oteri & Co., is to be domiciled in the city of New Orleans, and is to exist and continue for the space of two years, to be computed as commencing on and from the first day of July, eighteen hundred and eighty-four, unless sooner dissolved by mutual consent.

" Second. The capital invested in this copartnership consists of a sum of fifteen thousand dollars ($15,000) in United States currency and has been contributed by the parties hereto in the manner following, to wit :

" Five thousand dollars each of said Oteri and Scalzo, and the remaining five thousand dollars by said firm of Randazzo and Di Christina.

" It is hereby agreed that in the event more capital should be needed at any time during the existence of the contract to carry on said business the said Joseph Oteri shall, if he deems proper and not otherwise, furnish same surplus capital thus needed, and shall be entitled to and charge interest thereon at the rate of eight per cent per annum.

" Third. It is hereby furthermore agreed that said Oteri shall be the manager of said firm and as such have the exclusive control and direction of its affairs, as also of signing all documents of whatsoever nature or kind, without any excep-

tion or reservation whatsoever, pertaining to the business of the said firm and be, as he is, alone entitled to sign the name of said firm on all checks, bills of exchange, acceptances, bills of lading, promissory notes or other obligations of said firm; and that in the event of any other partner or partners infringing or violating this agreement by sending any orders to Europe or elsewhere or by signing any other documents whatsoever, then, and in such an event, the interest of the defaulting partner or partners shall at once cease and determine.

"Fourth. That said Oteri shall, as he is hereby empowered to, delegate all or part of his powers herein by power of attorney to one or more persons wherever in his judgment he shall deem the same expedient.

"Fifth. Books of account shall be kept in which all the dealings and transactions of said firm shall be entered from day to day and fairly written, from which trial balances shall be taken monthly and a final balance at the end of each year, which books shall be kept at all times open to the inspection of all parties in interest.

"Sixth. All profits, gains and increases arising or accruing from said business, and all losses, charges and expenses whatsoever incidental thereto shall be shared and divided and borne out and paid by the parties hereto in the proportions of one-third to each of said Oteri and Scalzo and the remaining one-third to said firm of Randazzo and Di Christina.

"It is furthermore hereby agreed that neither the capital invested in said partnership nor the profits arising therefrom shall be withdrawn by said copartners during the continuance of this contract, save and except that each of said partners shall have the right of withdrawing at the end of each business year one-half of his share in the profits of the concern.

"It is furthermore agreed that in addition to the interest of said Antonio Di Christina as a member of said firm of Randazzo and Di Christina herein he shall be entitled to and receive out of the net profits of the business of said firm of Joseph Oteri & Co. at the end of each of its business years two per cent as an extra compensation for services to be rendered by him to the business of said firm.

"Seventh. In the event of the death of either of said Oteri and Scalzo or both said Randazzo and Di Christina the partnership shall by the fact at once be dissolved and the remaining partner or partners allowed four months from the time of such dissolution to liquidate the affairs of the concern."

The cause being at issue, an examiner was appointed to take testimony, and report the same to the court, and the cause thereafterwards came on to be heard on the pleadings and proofs, and "was thereupon argued by counsel for the respective parties and referred by consent to J. W. Gurley, Esq., as master to pass upon the accounts herein and to report thereon at as early a day as possible." This was on March 4, 1887, and on the 18th of the following May the master filed his report. This report dealt only with the questions relating to the partnership, those arising in reference to damages for defamation of character having been reserved. He found that some time after the formation of the partnership, Oteri, Scalzo, Di Christina, and their bookkeeper, Terni, went to Europe in the business interests of the firm; and that the charge made in the cash book of the firm of $2538.32 for the expenses of the trip, which complainants contended was an overcharge, was correct and should be allowed : that at the time of the departure for Europe, Scalzo had paid into the capital $2000, and Randazzo and Di Christina $2500 : "3. That Oteri while in Europe made business arrangements in the interest of the firm. 4. That Vincenzo Scalzo remained in Europe for some time after the departure of Oteri for home," but "had no right to make contracts for the firm." "5. That some time after Scalzo's return from Europe near the middle of September, as near as the master can determine, Scalzo and Randazzo & Di Christina paid the balance due by them on the capital of the firm, viz.: Scalzo $3000 and Randazzo & Di Christina $2500. 6. That the books of the firm were not kept in strictly mercantile manner. 7. That Oteri did for a time after the formation of the partnership and before the 14th of November, 1884, drop the name of the firm and carry on the business in his own name. 8. That Oteri did not furnish his copartners monthly trial balances. 9. That on the 14th November, 1884, both

Terni, the bookkeeper, & A. Di Christina, the partner of Randazzo, wrote, with the approval of Oteri, to their correspondents in Europe that all the troubles between the members of the firm of Joseph Oteri & Co. had been adjusted; that Vincenzo Scalzo and Randazzo and Di Christina had paid in their share of the capital, and that the business would thereafter be conducted in the firm's name." He held that Oteri had violated the act of partnership in the particulars named, and also that there was a violation on the part of the other partners in not completing, until November, the payment of their share of the capital, which was due in July, but that on November 14, 1884, "all the acts theretofore committed, or omitted, by any of the partners in violation of the partnership agreement were mutually condoned, and that harmony was restored between the members of the firm, A. Di Christina himself actively aiding in making the announcement." The report discussed the evidence bearing upon the contention of complainants in avoidance of that adjustment, but concluded that all matters in controversy prior to November 14, 1884, "were amicably adjusted on that day and should be considered settled."

The master further found that the evidence did not show "that Oteri ever profited to the exclusion of his partners, nor an instance in which a loss of money to the firm resulted from an unauthorized act of any of the partners," and was of opinion that all the losses were attributable "to the depressed condition of the fruit market at the time of the arrival of the consignments and not to the acts of any of the partners." He recommended that the results from the books, as stated by witnesses, should be accepted as correct, and held that "the partnership should be considered as continuing uninterrupted from 1st July, 1884, to the 2d Feb'y, 1885, at which date Oteri was called to answer in the state court the suit of his copartners for its dissolution; that from the 2d Feb'y, 1885, Oteri had no authority to enter into any new engagements for, or on behalf of his copartners, but it remained his duty to conduct to conclusion all obligations and contracts made or commenced before that date."

The master was satisfied from the evidence that no amicable adjustment of the partnership could or would have been made by the partners, but that a suit was necessary to settle their affairs, and recommended that the costs be equally divided between the three.

To this report elaborate exceptions were filed, which were considered by the master and overruled. Randazzo and Di Christina subsequently assigned to Scalzo all their right and interest in the suit. The case having been heard on the exceptions to the master's report, it was decreed "that the complainant Vincenzo Scalzo, for himself and as subrogee of the other complainants, the firm of Randazzo & Di Christina, do have and recover of and from the defendant, Joseph Oteri, the sum of ten thousand dollars ($10,000), the amount put in the partnership by said complainants, less $\frac{2}{3}$ of $2538.32, expended in the interest of the partnership, with legal interest, to wit, 5% per annum, thereon from the date of judicial demand, June 11, 1885, until paid; that the other exceptions be overruled, and in other respects that the master's report be approved and confirmed. It is further ordered, adjudged and decreed that the complainants' bill of complaint be dismissed without prejudice to their right in some other form of action, as they may be advised, to prosecute the matter of defamation of character set forth in the bill of complaint. It is further ordered, adjudged and decreed that the costs be paid by the defendant."

A motion for rehearing was made and argued and a rehearing refused, and the case brought up on appeal.

*Mr. Joseph P. Hornor* and *Mr. Guy M. Hornor*, for appellant.

*Mr. George A. King* (with whom was *Mr. Charles W. Hornor* on the brief) for appellee.

On the question of our right to a rescission we refer your honors to *Mycock* v. *Beatson*, 13 Ch. D. 384; *Stoughton* v. *Lynch*, 1 Johns. Ch. 466; *Gridley* v. *Conner*, 2 La. Ann. 87; *Pillans* v. *Harkness*, Colles P. C. 442.

"If one partner withdraws or uses the partnership funds in his own private trade or speculations, he must account not only for the interest on the moneys so withdrawn, but for the profits of that trade." *Stoughton* v. *Lynch*, 1 Johns. Ch. 466.

The liability in such a case is as for money converted to his own use. *Reis* v. *Hellman*, 25 Ohio St. 180.

When a partner takes possession of all the stock, books, etc., and in a settlement furnishes no evidence of the insolvency of the debtors or unsuccessful diligence in collecting the claims, they will be regarded as cash in his hands. *Bush* v. *Guion*, 6 La. Ann. 797.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Undoubtedly equity has jurisdiction, where a person has been induced, by fraudulent representations, to enter into a partnership, to rescind the contract at his instance, and put an end to it *ab initio*. *Newbigging* v. *Adam*, 34 Ch. Div. 582; *Smith* v. *Everett*, 126 Mass. 304; *Fogg* v. *Johnston*, 27 Alabama, 432; Story Part. §§ 232, 285; 2 Lindley Part. (Wentworth's ed.) 554.

And it is contended that even though the formation of the partnership may have been free from that taint, there may be such fraud, misconduct and breach of duty in the conduct of its affairs from the inception, as to justify, upon dissolution, as between the parties, the restoration of his capital to the injured partner.

This bill alleged that complainants "are entitled to be refunded their said capital, with legal interest from 24th day of June, 1884, and they now make demand therefor;" and it prayed, among other things, that the partnership might "be decreed to be dissolved as if the same had never been made, by reason of the acts of said defendant; that an account of its business may be taken under the direction of this court, and that its legal liabilities may be paid and charged against the said Joseph Oteri, and that the capital of your orators, with interest, [may be,] restored to them in the premises, or otherwise

at the discretion of the court." If the case, upon the evidence, did not entitle complainants to a return of their capital, and to be placed in the same situation, as far as practicable, as if they had never entered into the partnership, but did authorize the ordinary decree for a dissolution and accounting, we are of opinion that relief could be awarded in the latter aspect, even though the bill were not framed with precision, in the alternative, for a cancellation or for a dissolution and accounting. If the specific prayer were insufficient, such a decree could be maintained under the prayer for general relief, since it would be conformable to the case made by the bill.

It is argued that the Circuit Court erred in the rendition of a decree at variance with the conclusions of the master, because the reference was by consent, and the report amounted to a determination by the parties' own tribunal, which could not be disregarded at the mere discretion of the court.

In *Kimberly* v. *Arms*, 129 U. S. 512, 524, it was said by Mr. Justice Field, delivering the opinion of the court: "A reference by consent of parties, of an entire case for the determination of all its issues, though not strictly a submission of the controversy to arbitration — a proceeding which is governed by special rules — is a submission of the controversy to a tribunal of the parties' own selection, to be governed in its conduct by the ordinary rules applicable to the administration of justice in tribunals established by law. Its findings, like those of an independent tribunal, are to be taken as presumptively correct, subject, indeed, to be reviewed under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise." But here the case was referred to the master "to pass upon the accounts herein and to report thereon," and while the master considered the whole case, apparently without objection, we do not regard the rule laid down in *Kimberly* v. *Arms* as applicable. The question whether the partnership should be held void from its inception was not submitted, *Richards* v. *Todd*, 127 Mass. 167, nor whether on other

grounds the whole capital should be returned. If the decree had been in accordance with the conclusions of the master, such concurrent action would indeed have been of wellnigh controlling effect. *Crawford* v. *Neal*, 144 U. S. 585. But there was no such concurrence. The Circuit Court decreed the return of complainants' capital less two-thirds of the amount expended on the European trip in the interest of the partnership, and the decree was evidently based upon the view that defendant had been guilty of such fraud or misconduct or violation of partnership obligations as justified the relief accorded.

The evidence tended to show that proper books of account were not kept, and that monthly trial balances were not furnished, and there is some evidence that towards the last defendant refused complainants access to the books and papers of the firm, but this is denied, and the controversy seems to relate to a letter-book. By the partnership articles, Oteri was to have exclusive control and direction of the company's affairs. He was not himself conversant with the keeping of books, and Terni, who had the confidence of all parties, was entrusted with the duty of doing so, and it is a fair inference that Oteri did not question the right of his partners to examine the books and papers, but only demanded a receipt from them for whatever book or paper they wished to take away for examination. It is also objected that Oteri did not furnish his quota to the capital. He was, however, confessedly responsible, and, as the manager, all the firm's money belonged in his possession, and the record indicates that he raised large amounts upon his own collaterals for the benefit of the business. His accounts cover the entire capital, the proper proportion being credited to each partner. Whether he technically deposited with himself $5000 is not especially material. At all events, we find no adequate support to the conclusion that the complainants suffered any loss by reason of the alleged dereliction of duty in these regards, and we do not think that of themselves they furnish sufficient ground for decreeing that complainants are entitled to the return of their capital, within the principle of the rule which has sometimes

been applied in such cases. The real gist of the controversy, in this view, lies in the conduct of Oteri after his return from Sicily. It appeared that early in October, 1884, he wrote to European correspondents that the business would be continued in his name; that he had dissolved the partnership; that he had decided to withdraw; that he was awaiting the arrival of Scalzo in order to withdraw; and as reasons for these announcements assigned having learned that one of his partners did not have a good reputation, and that the capital had not been paid in in full, as was indeed the fact. But it also appeared that the firm continued to do business, and that on the 14th of November, 1884, letters were written that the capital had been paid in; that the business would go on under the firm name; and that all had been arranged, etc. These letters were written by Terni, the bookkeeper, and by Di Christina, one of the partners, and perhaps by others, for Oteri, who, as we understand, could neither read nor write Italian. Exactly when the balance of capital to be paid by Scalzo and Randazzo and Di Christina was made up is not clear, but Randazzo testifies that he paid in the balance of his share in November, and Scalzo seems to have done so at about that time.

Without discussing the evidence in detail, we think the master was correct in holding that the preponderance of evidence was to the effect that Oteri's action early in October, in regard to continuing the business in his own name, was condoned, and the difficulties between the partners adjusted for the time being. And whatever business had been transacted in his individual name was treated as if there had been no interruption. It may be that complainants were ignorant of Oteri's action in sending the October letters, but they can hardly be permitted to say that they did not know how the business was being conducted, particularly in view of the fact that Di Christina was employed in the business and allowed by the contract two per cent as extra compensation for services. Scalzo resided in St. Louis, and Randazzo was unable to read or write; but, nevertheless, through their own observations, and certainly through Di Christina, they

ought to have had knowledge of what was going on. It is said that Di Christina was young and not of strong mind and easily influenced, but there is no issue of that kind made in the pleadings, and we are not satisfied with that excuse for ignorance. Upon the whole record, we regard the case as one for an accounting rather than necessarily for a return of capital. No fraudulent representations as inducements to the formation of the partnership are alleged to have been made, and whatever objectionable features may have characterized Oteri's conduct and management, a scheme to defraud his copartners is not shown to have existed. In the absence of satisfactory proof that losses were occasioned by his misconduct or that the want of success which attended the business is traceable to that cause, complainants should not be reinstated at his expense in the same position as if they had not entered upon an enterprise which turned out to be unfortunate.

We cannot, however, accept the correctness of the exhibits attached to the answer as so far made out as to justify us in ordering a decree to be entered in accordance therewith. The books consisted of the originals and a new set made from the originals, which seemed in themselves to be practically unintelligible, and the results set forth in the exhibits were arrived at by a friend of the partners, assisted by an accountant. But the new books were made up, the balances struck, and the statements prepared upon the basis of explanations made by Oteri, and we are unwilling to proceed upon these results in the absence of a specific disposition of them by the Circuit Court. Amounts are charged against Scalzo, and Randazzo and Di Christina, the receipt of which they deny, and which appear to require further investigation as to their accuracy; and so as to the indebtedness of one Zuccas, for which, it is contended on one side and denied on the other, that Oteri ought to be held responsible under the circumstances. We think the item of $2538.32 was properly allowed, and that it needs no further consideration. We find in the record that a motion was made for an order on Oteri to pay the cash on hand into court, but we are not informed whether such an order was entered and complied with. No reason is

perceived why this should not have been done, nor, indeed, why Scalzo and Randazzo and Di Christina should not have received the amounts which Oteri conceded belonged to them. In a further accounting the question of interest on this money, if it has remained in Oteri's hands, will present itself for adjustment. *Gridley* v. *Conner*, 2 La. Ann. 87.

We are of opinion that the partnership continued until February 2, 1885, when, it is agreed, complainants filed a bill for dissolution in the state court, (which we assume has been disposed of,) and should be dissolved as of that date; and that an accounting should be had.

*The decree is reversed with costs, and the cause remanded for further proceedings in conformity with this opinion.*