## WALLER v. HENDERSON.

No. 18720.   Opinion Filed Feb. 26, 1929.

H. W. Sitton, for plaintiff in error.

Jones & Clift, for defendant in error.

JEFFREY, C. This action was begun in the district court of Stephens county by C. F. Henderson, as plaintiff, against J. A. Waller, as defendant, for the recovery of $600 alleged to have been fraudulently collected from plaintiff by defendant. The petition charges, in substance, that for several years prior to June 6, 1925, plaintiff and defendant were engaged as partners in the general retail furniture business, under the firm name of Duncan Bankrupt Company, in the city of Duncan, Okla.; that for the purpose of carrying on said furniture business, said partnership rented and leased a certain store building located on Main street in said city; that, on or about January 1, 1924, the defendant obtained in his own name a renewal

lease upon the building, in which said furniture store was located, for a period of two years, at a rental of $75 per month to be paid $100 per month for the first 18 months. Plaintiff further alleged that defendant represented to him that the rental for said lease was to be $100 per month for 24 months, and concealed from plaintiff the fact that defendant had taken the lease in his name, or claimed an individual interest in the lease. Plaintiff further alleged that on June 6, 1925, he purchased all interest of the defendant in the partnership business, and that said partnership was dissolved; that upon the winding up of the partnership and the completion of the sale of defendant's interest, defendant represented that he had personally obligated himself to the owner of the building, in which the store was located, for the rent; and requested that plaintiff pay the rent for the balance of the term to defendant at the rate of $100 per month. It was further alleged that plaintiff relied upon the statements and representations of defendant, and, after the 6th day of June, 1925, paid each month in advance the sum of $100 to defendant; that after the expiration of the lease, plaintiff ascertained from the owner of the building that the partnership, or either member thereof, did not owe any rental on the building for the last six months under the lease. Plaintiff then asked for judgment in the sum of $600 so paid. Defendant answered by denying all allegations, except such as were specifically admitted. He admitted that at the time mentioned in the petition, he and plaintiff were engaged in the furniture business in the city of Duncan, but alleges that said partnership was confined solely to the furniture business. He further admitted the sale of his interest in the partnership, but alleged that the lease on the building was his individual property, which he sold and assigned to plaintiff at the time he sold his interest in the partnership. Upon the issues thus joined, the cause was called for trial before a jury. After the evidence was introduced, plaintiff moved for a directed verdict. The court sustained the motion, and thereupon discharged the jury and rendered judgment in favor of plaintiff for the sum asked, on the theory that there was no issue of fact to be submitted to the jury. From this judgment and the order overruling motion for new trial, defendant has appealed.

Defendant's first assignment of error is that the court erred in rendering judgment in favor of plaintiff at the close of the testimony, because the testimony presented certain issues of fact which should have been determined by a jury. We shall proceed to examine the evidence to ascertain whether or not there was any issue of fact to be submitted to the jury. Plaintiff's evidence discloses that about October, 1921, defendant, Waller, purchased a small stock of furniture at a bankrupt sale; and that he gave Guy O. Henderson a one-half interest in the profits thereof to sell out the stock. Guy O. Henderson and defendant continued to sell out the bankrupt merchandise for a short time without any understanding that they would continue in the furniture business. A few months thereafter it was decided to continue the furniture business, and thereupon plaintiff, C. F. Henderson, entered the business as a partner, put in about $500, and a certificate of copartnership, bearing the names of plaintiff and defendant as the partners, was duly executed and filed. Plaintiff did not devote his time to the furniture business, but he was represented by his son, Guy O. Henderson, who worked in the store. The proof shows that the stock of furniture was moved into the building in which it was located at the time of the dissolution of the partnership about the time that plaintiff became a partner, which was near the first of the year 1922. The partnership continued in business, first paying rent to a Mr. Craig, who was then the owner of the building, later to O. B. Surber, who purchased the building from Craig. Shortly before the first of January, 1924, defendant spoke to Guy O. Henderson about securing a renewal lease on the same building at a lower rental than was being paid. To this suggestion Guy O. Henderson, on behalf of his father, agreed. Defendant then advised Guy O. Henderson that he had secured the lease for two years at $100 a month instead of $150, which the partnership had been paying. Defendant never advised Guy O. Henderson that he had taken the lease in his name, or that he claimed the lease as his individual property. From the time the rent was reduced, as in the past, the rent was paid each month by check on the partnership account. Guy O. Henderson further testified that when defendant sold his interest in the store, he represented to witness that he had personally obligated himself to pay the rental for the remainder of the term of two years, and asked that the rent thereafter be paid to defendant, which Guy O. Henderson agreed to do and did so. This witness further testified that several months after he had paid the balance of the rental amounting to $600, he learned from Claud Raybourn, who was then the owner of the building, that under the rental contract, the owner of the building

was to receive $75 per month, to be paid $100 per month for the first 18 months, and no rental was to be paid for the last six months; and that said Raybourn had not received the rents which had been paid direct to defendant. O. B. Surber and Claud Raybourn, who owned the building at different periods during the term of the lease, each testified that defendant had asked them to not inform Henderson as to the arrangement defendant had made with reference to the lease. One of these witnesses stated that defendant gave as his reason for keeping the facts regarding the lease from Henderson, that he wanted to get rid of Henderson.

Defendant's evidence was merely to the effect that he took the rental contract in his own name; that it was his individual property; that it was no part of the partnership business, and that he had a right to sell it to plaintiff and to receive any profit which he was able to make. Defendant introduced in evidence a written memorandum signed by Guy O. Henderson for the Duncan Bankrupt Company, by the terms of which it was agreed that said bankrupt company would retain the building then occupied by it, and pay $100 per month in advance to defendant. This memorandum was executed at the time defendant sold his interest in the business, and it made no mention of who held the lease. Defendant did not deny that he had purposely concealed the facts about the lease from his copartners.

Section 8111, C. O. S. 1921, provides:

"The relations of partners are confidential. They are trustees for each other, as to partnership property."

Section 8110, C. O. S. 1921, is as follows:

"Property whether real or personal acquired with partnership funds is presumed to be partnership property."

Section 8112, C. O. S. 1921, is as follows:

"In all proceedings connected with the information (formation) conduct, dissolution and liquidation of the partnership, every partner is bound to act in the highest good faith toward his copartners. He may not obtain any advantage over them in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind."

These statutory provisions are merely declaratory of the common-law principles governing the relation of partners. The proof is that the plaintiff was a partner in the business, and the business was located in the building for approximately two years prior to the time that defendant took the lease in his individual name. Prior to the securing of the new lease, the partnership had paid the rent on the building. After the new lease was secured, the partnership paid the rent on the building. The presumption therefore is that the rental contract was the property of the partnership, and we think this could only be rebutted in a case of this kind by proof of an understanding or agreement between the partners to the contrary.

The law imposes upon a partner the duty of acting with the utmost good faith toward his copartner, of devoting his time and energy to the firm's business, and accounting faithfully for all firm property coming into his hands. Hence, a partner will not generally be permitted to engage in a transaction or business antagonistic to the interest of the firm without the consent of his copartners. A partner is the confidential agent of his copartners in all partnership transactions. He will not be permitted to secure for himself that which it is his duty to obtain for his firm. In this connection, 30 Cyc. 458, states the rule as follows:

"* * * Accordingly, if he purchases property for his individual benefit, or takes a lease of it when the firm is entitled to the advantage of such purchase or lease, or secures a valuable contract for himself, which it was his duty to obtain for the firm, he will be treated as a trustee thereof for the firm, and be compelled to account to the firm for the profits of the transaction unless such a purchase or transaction is assented to by his copartners The same result will follow any attempt by one partner to appropriate firm property to his individual benefit, without the consent of his copartner."

The rule of good faith between and among partners applies also to those who are about to become partners and between and among those who have been partners, and who are still engaged in the business of winding up the partnership affairs. 20 R. C. L. 880. In 20 R. C. L. 880, section 93, it is said:

"* * * The same principle prevents a partner from obtaining a renewal of a partnership lease for his own purposes to commence after the expiration of the original lease, or after the termination of the partnership. The chance or opportunity of renewal of a lease held by a partnership is considered in itself a distinct asset of the partnership in which all partners have an interest, and, consequently, in such cases, the lease so taken inures to the benefit of the firm, the partner taking it holding it as a constructive trustee."

The rule of good faith is most especially required to be observed where one partner is trying to get rid of another. Ehrmann v. Stitzel (Ky.) 90 S. W. 275. In the case of

Leach v. Leach, 18 Pick. 68, a member of a partnership took a lease on the building in which the same did business for a term of years extending beyond the life of the partnership. In an action for accounting for profits made from the lease, it was held:

Where one partner, during the partnership, takes a lease of the building in which the firm did business for a term extending beyond the partnership, he is accountable to the representative of his copartner for the profits of the lease.

It goes without saying that a furniture business could not be operated profitably without a suitable building. A building within which to carry on the business is incidental to the business. The building had been occupied by the firm's business for approximately two years prior to the taking of the lease in the name of the defendant. The right to an extension or renewal of the lease belonged to the partnership, and was an asset of the firm business. Defendant had no right to it without the consent of his copartners, and he, having secured it in his own name, will be deemed to have taken it as trustee for the partnership. He, as trustee, was not entitled to a profit from his firm, even after he had sold his interest, without a full disclosure of the true facts about the transaction; and then only with the consent of his former partner. The firm was entitled to all the benefits and advantages to be received from and under the lease. The partnership had paid the rent in full, and one of the benefits from so doing was to occupy the premises for the remainder of the term without a rental charge. Defendant had no individual interest in the lease to sell his copartners aside from his interest in the partnership. By reason of his position as a partner, he was enabled to deceive plaintiff as to what the facts were, and thereby obtain from him by misrepresentation the sum sued for.

Defendant did testify that the lease was no part of the firm business, and that it was his individual property. These statements, of course, were mere conclusions of law, and it was the duty of the trial court and is the duty of this court to say, under all of the evidence, whether defendant offered any evidence, which, if admitted to be true, would as a fact tend to deny his liability. Admitting all facts offered in evidence by defendant to be true, we fail to find any issue of fact to be submitted to the jury. Under all the evidence, the law requires that

defendant return to plaintiff the money so obtained.

Defendant's next assignment of error is that the court erred in ruling out certain competent and material testimony over the objections of the defendant. After both parties had rested and the motion for a directed verdict had been sustained, counsel for defendant stated that he would like to offer a little more evidence, and suggested that he could dictate into the record what he expected to prove. The order and judgment of the court were not vacated or the case reopened, nor was there a request for such action. But aside from that, we think the evidence offered was not competent for the purpose offered. The offer, in substance, was to prove by Guy O. Henderson that, during the time of the special partnership between himself and J. A. Waller, the partnership was confined solely to the sale of merchandise, and that the witness, Guy O. Henderson, during the time he is alleged to have been a partner with the defendant, was appointed trustee in bankruptcy for a drug store, and that he received in fees the sum of about $600 to $800; that he was taken away from the business on account of such trusteeship, but that he did not account to the partnership for the said sum so received. This offer was made for the purpose of showing a special agreement and understanding between the parties that either could transact their own business outside of the furniture business, and further that Guy O. Henderson was not responsible for any indebtedness of the furniture company. There is at least one good and sufficient reason why this offered testimony was not admissible for the purpose offered. The partnership alleged by plaintiff to have existed at the time this cause of action arose, and admitted to have existed by defendant, was between plaintiff, C. F. Henderson, and defendant, J. A. Waller. What the understanding between the partners was during the time that Guy O. Henderson was a partner would have no bearing on the questions involved in this case. We think the evidence was clearly inadmissible for this reason if for no other. We find no reversible error in the record, and the judgment of the trial court is affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 27 L. R. A. 484; 32 L. R. A. (N. S.) 869; 20 R. C. L. p. 882.