## KNAPP v. FIRST NAT. BANK & TRUST CO. OF OKLAHOMA CITY et al.

### No. 3207.

Circuit Court of Appeals, Tenth Circuit.

March 26, 1946.

396

G. C. Spillers, of Tulsa, Okl. (G. C. Spillers, Jr., of Tulsa, Okl., on the brief), for appellant.

F. A. Rittenhouse, of Oklahoma City, Okl. (John F. Webster, Walter D. Hanson, and Olive R. Rittenhouse, all of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

On March 25, 1944, Clyde L. and Eugene C. Ottinger, copartners doing business as Ottinger Brothers, entered into a contract[1] with Gage by which the Ottingers agreed to sell to Gage certain road machinery and equipment, described and set forth in exhibits attached to the sale contract, for a total consideration of $200,000, to be paid as follows: $100,000 within 30 days, $50,000 within 60 days, and $50,000 within 120 days, from the date of the sale contract. The sale contract designated the First National Bank and Trust Company of Oklahoma City[2] as escrow agent and provided that the sale contract, together with bills of sale, either in blank or covering the machinery and equipment, should be deposited with the escrow agent; that all payments should be made to the escrow agent; that as payments were made, the escrow agent should deliver appropriate bills of sale and distribute such payments to the Ottingers. It further provided that simultaneously with its execution, Gage should pay to the escrow agent $5,000, to be distributed by the escrow agent for one of the following purposes:

"(a) To the Buyer, if Seller shall breach this Agreement.

"(b) To the Seller, as liquidated damages if Buyer shall breach this Agreement.

"(c) To the Seller, as the final $5,000.00 payment of the total $200,000.00 consideration, upon complete consummation of the Agreement."

On 'April 25, 1944, Gage entered into a partnership agreement with Knapp. The partnership agreement recited that Gage and the Ottingers had entered into the sale contract and that the terms thereof were well known to Knapp; that Gage had undertaken to make certain payments under the sale contract and was in need of financial assistance to make such payments; and that Knapp was willing to advance $25,000 to Gage to be used to make a payment on the sale contract. It provided that Knapp, within one week from April 25, 1944, would deliver to Gage $25,000, to be wired to the escrow agent and to be applied by it as a part payment by Gage on the sale contract, and that Knapp and Gage should share equally in the profits derived from the sale contract and bear equally the expenses incident to the selling of the property acquired under the sale contract.

On May 15, 1945, Knapp commenced this action against the escrow agent, Gage, and the Ottingers. In his second amended complaint, Knapp alleged the requisite jurisdictional facts and that on May 2, 1944, he deposited with the escrow agent $25,000 in cash. He further alleged the execution of the sale contract and the partnership agreement and attached copies thereof, as exhibits, to his complaint. He further alleged that on April 25, 1944, Gage exhibited to him the sale contract and stated to him that she "had complied with all the terms and conditions" thereof, and that she would in the future "fully and faithfully perform and discharge" all the terms and conditions thereof; that he deposited the $25,000 with the escrow agent pursuant to the partnership agreement and that the escrow agent still has such deposit in its possession; that the statements of Gage were made to him with the design and purpose of inducing him to enter into the partnership agreement; that he relied thereon and was induced thereby to enter into the partnership

---

[1] Hereinafter referred to as the sale contract.

[2] Hereinafter referred to as the escrow agent.

agreement; that such statements were false and known by Gage to be false when made; that Gage did not intend to carry out the terms and conditions of the sale contract and did not intend to carry out the terms of the partnership agreement; that immediately after the execution of the partnership agreement, he discovered the fraud; that thereupon he notified the escrow agent, the Ottingers, and Gage that he had been defrauded and that he elected to rescind the partnership agreement, and demanded the return from the escrow agent of the $25,000 deposited by him; and that the escrow agent refused to return such deposit.

He prayed that the partnership agreement be canceled, that he be adjudged to be the owner of the amount deposited with the escrow agent, that the Ottingers and Gage be adjudged to have no interest in such deposit, and that he be awarded judgment against the escrow agent for $25,000.

In his second amended complaint, Knapp did not allege any facts connecting either the escrow agent or the Ottingers with the alleged fraud or showing any knowledge on their part of the alleged fraud until after the $25,000 had been received by the escrow agent from Knapp.

The escrow agent filed an answer and cross-claim. It admitted the jurisdictional facts and admitted that the Ottingers asserted a claim to the funds deposited with it. It denied the other allegations of Knapp's second amended complaint. In its cross-claim it set up the sale contract and attached a copy thereto, as an exhibit, to its answer. It further alleged that on March 27, 1944, the United States National Bank of Portland, Oregon, deposited with it as escrow agent and on behalf of Gage, the sum of $5,000; that on March 25, 1944, Gage requested the Ottingers to permit her to deliver certain pieces of machinery covered by the sale contract to a third party; that Gage delivered to the escrow agent a draft for $5,331; that such draft was dishonored; that Gage had collected rentals in the approximate sum of $800 upon such machinery and incurred indebtedness in the sum of $114.05 for hauling such machinery; that such indebtedness had not been paid; that such machinery had been returned to the Ottingers; that on May 1, 1944, the escrow agent received from Gage a telegram which stated that in consideration of the Ottingers extending the time for making the $100,000 payment on the sale contract, to and including May 25, 1944, Gage was wiring the escrow agent $25,000 to be applied as part payment on the sale contract, or, in the event the balance of $75,000 should not be paid within the time as extended, to be paid to the Ottingers as liquidated damages.

That on April 29, 1944, the Crocker First National Bank in San Francisco, California,[3] called the escrow agent by telephone and advised it that Gage had made a deposit in excess of $25,000 with the Crocker Bank and that upon collection of such deposit, the Crocker Bank would transfer to the escrow agent $25,000 for deposit in the escrow account; that on May 2, 1944, the escrow agent received from the Crocker Bank a telegram reading as follows: "Pay to Yourselves $25,000.00 for Credit and Advice of Ottinger Bros. Escrow Account by Order of Lois M. Gage. Forward Receipt. We Are Remitting Through Federal Reserve Bank of San Francisco."

That on that date the Crocker Bank transferred to the escrow agent by wire, through the Federal Reserve Bank, $25,000 which was deposited in the escrow account; that, upon receipt of the telegrams from Gage and the Crocker Bank, the escrow agent communicated with the Ottingers and was advised by them that the extension requested was granted.

That on May 17, 1944, Gage exhibited to the escrow agent the partnership agreement and advised it that Knapp had become a partner of Gage.

That on May 19, 1944, Gage sold third parties certain items of equipment and delivered to the escrow agent purchasers' checks in the total sum of $5,350; that the escrow agent delivered bills of sale covering such items and delivered to the Ottingers $4,932; that the balance of $418 was left in the escrow account; that on May 25, 1944, Knapp served a written notice on the escrow agent to the effect that he was interested in the funds deposited in the escrow account, and that any payment of such funds to Gage or her order, or any disposition of such funds without Knapp's approval, would be at the risk of the escrow agent and would subject it to liability; that on May 26, 1944, the Ottingers made demand upon the escrow agent

---

[3] Hereinafter called the Crocker Bank.

**398**

for the delivery to them of the funds in the escrow account.

The escrow agent further alleged that it made no claim to the sum of $30,418 deposited in the escrow account and that it was willing to pay the same to the rightful owners. The escrow agent prayed for judgment adjudicating the ownership of such funds on deposit with it.

On December 11, 1944, Gage entered a general appearance in the action. On May 24, 1945, the Ottingers filed a motion to dismiss the action. On July 25, 1945, the escrow agent filed a motion to dismiss its cross-claim.

The trial court held that no fraud had been alleged or could be alleged entitling Knapp to recover and that Knapp's sole remedy was a suit for a dissolution of the partnership and for an accounting. From a judgment dismissing the action, Knapp has appealed.

The general rule that a partner cannot maintain an action at law on a claim growing out of the partnership transactions until there has been an accounting and final settlement of the partnership affairs, and that his only remedy is to apply to a court of equity for dissolution and an accounting, is settled law in Oklahoma.[4]

However, there is no doubt that a court of equity has jurisdiction, where a person has been induced, by fraudulent representations, to enter into a partnership, to rescind the contract at his instance, and, as between the partners, put an end to it ab initio.[5]

The relationship between partners is fiduciary and it imposes on them the obligation of the utmost good faith and integrity in their dealings with one another with respect to partnership affairs. Such duty of good faith exists also between persons who are about to become partners.[6]

Here, we think the allegations of fraud, if true, would constitute grounds for a court of equity setting aside the partnership agreement and adjudging it void ab initio, as between Knapp and Gage.

What we have said is not to be construed as implying that Knapp can or cannot recover the $25,000 deposited, either from the escrow agent or the Ottingers.

It is not possible to determine from the pleadings whether Knapp, pursuant to the partnership agreement, deposited the $25,000 in cash with the escrow agent, to be applied as a payment on the sale contract, as alleged in the second amended complaint, or whether it was received, as alleged in the escrow agent's answer and cross-claim, from the Crocker Bank, or, if the latter, the circumstances attending the deposit and transfer to the escrow agent.

One who, by fraudulent means, has been induced to part with the ownership and possession of ordinary personal property may follow it, on rescission of the contract by which the title passed, into the hands of a third person who has obtained it without notice of the fraud but in consideration only of a preexisting indebtedness. However, with respect to money and negotiable instruments and their proceeds, a different rule obtains. Although procured by fraud, money cannot be reclaimed after a creditor has received and applied it, in the ordinary course of business and in good faith, in satisfaction

[4] Cobb v. Martin, 32 Okl. 588, 123 P. 422, 425; Price v. Smith, 116 Okl. 27, 243 P. 153; Lavery v. Gardner, 116 Okl. 63, 243 P. 216, 217; Burbank Garage v. United States Fidelity & Guaranty Co., 144 Okl. 163, 289 P. 1106, 1107.

Cf. Anderson v. Whitener, 127 Okl. 284, 261 P. 156, 158, 159.

[5] Oteri v. Scalzo, 145 U.S. 578, 588, 12 S.Ct. 895, 36 L.Ed. 824; Gathright v. Fulton, 122 Va. 17, 94 S.E. 191, 193; Jones v. Weir, 217 Pa. 321, 66 A. 550, 552, 10 Ann.Cas. 692; Fouse v. Shelly, 64 W.Va. 425, 63 S.E. 208, 211; Harlow v. LaBrum, 151 N.Y. 278, 45 N.E. 859, 860; Caplen v. Cox, 42 Tex.Civ. App. 297, 92 S.W. 1048, 1051; Miller v. Kraus, Cal.App., 155 P. 834, 836; Smith v. Everett, 126 Mass. 304, 306;

Fogg & Vanderslice v. Johnston, 27 Ala. 432, 436, 437, 62 Am.Dec. 771; Hynes v. Stewart & Owens, 49 Ky. 429, 433, 10 B.Mon. 429, 433; Rawlins v. Wickham, 65 Eng.Reprint 954.

[6] Fouse v. Shelly, 64 W.Va. 425, 63 S. E. 208, 211; Waller v. Henderson, 135 Okl. 231, 275 P. 323, 325; Thomas v. Mathis, 181 Okl. 1, 72 P.2d 484, 486.

54 O.S.A.1941 § 10, provides:

"In all proceedings connected with the information [formation], conduct, dissolution and liquidation of the partnership, every partner is bound to act in the highest good faith toward his co-partners. He may not obtain any advantage over them in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind."

of a preexisting debt.[7] And where the holder of a negotiable instrument deposits it with a bank for collection and the bank collects it, credits the depositor with the proceeds, and pays the proceeds out at the direction of the depositor to a third person, who receives it in good faith and for value, in the ordinary course of business, the third person takes the proceeds free of any defenses available to prior parties against the depositor.

It is well settled under The Negotiable Instruments Law, which is in force in Oklahoma, that a preexisting debt constitutes value.[8]

However, we think the rights of the escrow agent and the Ottingers should not be resolved on the pleadings.

The cause is reversed, with instructions to vacate the judgment dismissing the action and to proceed further in conformity with this opinion.

[7] Benjamin v. Welda State Bank, 98 Kan. 361, 158 P. 65, 66, 67, L.R.A.1917A, 704; American Express Co. v. Anadarko Bank & Trust Co., 179 Okl. 606, 67 P. 2d 55, 58, 110 A.L.R. 972; Stephens v. Board of Education, 79 N.Y. 183, 187, 35 Am.Rep. 511; Goshen Nat. Bank v. State, 141 N.Y. 379, 36 N.E. 316, 317; Hatch v. Fourth National Bank, 147 N. Y. 184, 191, 41 N.E. 403, 404.

[8] Ogle v. Armstrong, 54 Okl. 486, 153 P. 1139, 1140; Douthat v. Bank of Quapaw, 96 Okl. 289, 222 P. 547; Duncan v. First National Bank, 122 Okl. 58, 251 P. 69; Milburn v. Miners' & Citizens' Bank, 101 Okl. 281, 226 P. 42, 43; Midland Savings & Loan Co. v. Donohoo, 181 Okl. 498, 74 P.2d 1147, 1149; 48 O.S.A. § 72.