PIERCE, RESPONDENT, *v.* TEN EYCK, APPELLANT.

PARTNERSHIP — *Dissolution — Accounting.* — Where one of two equal partners collects a private debt of his copartner, giving him no credit therefor, and uses it in the firm business, he is liable to his copartner for one half of such debt, though he has sold to him his entire interest in the firm business and partnership property.

SAME — *Dissolution by purchase of interest.* — Where one partner contributed a greater share to the firm than the other, which it was agreed should be deducted upon a dissolution, and subsequently terminates the partnership by a purchase of the other's interest, without reservation of any demands, he cannot recover the sum so contributed in excess, as the purchase operated as a relinquishment of such a claim.

SAME — *Purchase of interest — Negligence.* — Where it appeared in the case at bar that the purchasing partner voluntarily bought his copartner's interest when he feared the books were wrong and had not been properly kept, and afterwards discovered that he had paid a greater sum for such interest than he would have done had he known the true condition of the books. *Held,* that he could not recover such excess from the selling partner, having been negligent in purchasing upon the showing of books which he believed to be erroneous.

SAME — *Accounting — Contracts between partners.* — In the case at bar it was agreed between the plaintiff and defendant, who were partners, that during the absence of the defendant, who was to leave the business for three months, the firm should be credited with fifty dollars per month to compensate for defendant's loss of time. No such credit was ever given. *Held,* that plaintiff's claim for his share of such credit was extinguished by the purchase of defendant's interest.

*Appeal from First Judicial District, Jefferson County.*

The testimony was taken before a referee, who found the plaintiff entitled to judgment for the sum of $1,131.02. Judgment was rendered in accordance with the report of the referee, and defendant's motion for a new trial was overruled by Mc-CONNELL, C. J.

*G. O. Freeman, M. S. Gunn,* and *McConnell & Clayberg,* for Appellant.

The purchase by plaintiff of defendant's interest in the copartnership was made with full knowledge that there were omissions

in the books, and with absolute knowledge of the errors and omissions in the particular items upon which he recovered in this action. Plaintiff's own testimony shows that he knew the books were wrong, especially in regard to those items upon which judgment was awarded in this action, and therefore he was placed upon his notice, and it was his duty to have made an investigation of the books, or had it done for him, and as he did not, but bought defendant's interest for a specific sum with this knowledge, he cannot now claim fraud by reason of misrepresentations by defendant, or of the incorrectness of the books themselves. (*Parsons* v. *Hughes*, 9 Paige, 591; *O'Dell* v. *Rogers*, 44 Wis. 181; 2 Parsons on Contracts, 772; *Adams* v. *Sage*, 28 N. Y. 103.) Even though it were true that plaintiff had no notice of the fraud, so long as he could have ascertained the true condition of the books with ordinary diligence, he cannot now be allowed to set up fraud. It is well settled that where there are misrepresentations, and the truth can be ascertained with ordinary diligence, no action lies. (*Long* v. *Warren*, 68 N. Y. 426; *Tallman* v. *Green*, 3 Sand. 437; *Smith* v. *Countryman*, 30 N. Y. 681; *Slaughter's Adm'r* v. *Gerson*, 13 Wall. 383; 2 Parsons on Contracts, 773, and note; *Ætna Ins. Co.* v. *Reed*, 33 Ohio St. 292; *Fulton* v. *Hood*, 34 Pa. St. 365; 75 Am. Dec. 664; *Gatling* v. *Newell*, 9 Ind. 572; Bigelow on Fraud, 66; *Mayhew* v. *Phœnix Ins. Co.* 23 Mich. 105; *Foley* v. *Cowgill*, 5 Blatchf. 18; 32 Am. Dec. 49; *Salem India Rubber Co.* v. *Adams*, 23 Pick. 256.) The element which is lacking in this case to make the misrepresentations actionable, if they were misrepresentations, is that they were not relied on nor acted upon by plaintiff. The agreement between the partners, in relation to the excess contributed by Pierce, was that in case of a dissolution and accounting, Pierce's excess should be deducted before a division of the resources, but that there was no dissolution and accounting as anticipated by the agreement, but merely the purchase of defendant's interest, whatever it was, and plaintiff in fact received the whole of his excess. The plaintiff was not entitled to recover the seventy-five dollars defendant agreed to allow during his absence in the East, because this account was canceled and extinguished in the agreement of dissolution and purchase. (*Murdock* v. *Mehlhop*, 26 Iowa, 213; *Norman* v. *Hudleston*, 64 Ill. 11.)

*Massena Bullard,* for Respondent.

It is alleged by the plaintiff, and not denied by the defendant, that under the partnership agreement it was the duty of the defendant to keep the books of accounts of said firm. The items complained of by the plaintiff did not appear in the books; the Hubble items were not credited to the plaintiff's account. The excess in the investment was not credited to the plaintiff's account, and the amount agreed upon during the absence of the defendant did not appear. It is alleged by the plaintiff, and established by the proof, that if the plaintiff had been informed of the true condition of the partnership, he would never have made his purchase, and he would never have paid the defendant anything for his interest in the partnership. We take it to be a self-evident proposition that in a case like this, when one partner is in charge of the books, and the other, as shown by the testimony, has nothing to do with reference to keeping the books, nor has any knowledge of book-keeping, but relies upon his partner in that behalf, it is the duty of the man who keeps the books to keep them accurately, and when he turns them over to his partner that is of itself a sufficient representation as to the correctness, and particularly as to the honesty of the entries in the books; and the partner to whom such representation is made has the right to rely upon that representation. ( 2 Lindley on Partnership, 486; *Smith* v. *Smith,* 30 Vt. 139.) "If the fraud be such that had it not been practiced, the contract would not have been made or the transaction completed, then it is material to it; but if it could be shown or made probable that the same thing would have been done by the parties in the same way, if the fraud had not been practiced, it cannot be deemed material." (2 Parsons on Contracts, 770.)

BLAKE, C. J.—Pierce brought this action to recover certain amounts which he alleged had been collected by Ten Eyck when they were copartners, and not entered upon the books of the firm, or accounted for. A referee was appointed to take the testimony, and his findings were adopted by the court. It appears that the copartnership continued from the fifteenth day of September, 1882, until the eighteenth day of March, 1886, when Pierce

" purchased the said defendant's interest in said partnership and in the property, and resources and assets belonging thereto, paying the said defendant for his said interest the sum of $4,000." The judgment consists of three items, which will be considered in their order, in the report of the referee.

One Hubble was indebted to Pierce, personally, before the formation of the copartnership, in the sum of $422.50, which was received by Ten Eyck in the year 1883, and not placed to the credit of Pierce upon the books. The entries regarding this amount indicate clearly that it was not appropriated by the appellant to his individual use, but became a part of the assets of the firm. The account of Hubble shows that there has been placed to his credit the sum of $300, which is followed by the remark : " Debtor to Pierce." Hubble was in the employ of the firm, and one Locker, through a cattle trade with the parties, paid a debt to Hubble, who had another credit in the sum of $122.50. While the books are not accurate in these matters, they do not establish the right of Pierce to the whole amount. This sum of $422.50 did not lawfully constitute any part of the property of the firm, and the purchase by Pierce of the interest of Ten Eyck did not embrace or settle the account. But Ten Eyck, as a copartner, actually had the benefit of one half of the amount, which had been credited to Hubble; and the respondent should have a judgment therefor.

Pierce contributed to the firm the sum of $387.52 in excess of his share; and it was agreed that upon the dissolution of the copartnership this amount should be first deducted from the assets, and that the remainder should be divided equally between the parties. This is the second item of the account for which the respondent recovered judgment. There was no contract in writing which defines the rights of the copartners, and the evils which generally ensue under these conditions attend the parties. The sale by Ten Eyck to Pierce of his entire interest in the property of the firm worked a dissolution. (*Rogers* v. *Nichols*, 20 Tex. 719.) But we are of the opinion that the agreement did not contemplate a termination of the partnership in this way, and that Pierce, by his new bargain with Ten Eyck, which was a purchase without any reservation of demands, relinquished all claims of this class.

The respondent testified before the referee that he feared there was something wrong; that he did not believe the books were properly kept; and that he had discovered some mistakes. The errors of which he chiefly complains are the omissions of Ten Eyck, who was the book-keeper, to make entries pertaining to the business. Pierce could have investigated thoroughly the books, with the aid of experts, if necessary, and ascertained every fact therein concerning the affairs of the firm. Instead of pursuing the course which was dictated by wisdom, when his mind was swayed by suspicion of the conduct of Ten Eyck, he purchased voluntarily the interest of his partner. The referee finds "that the books were in a condition to mislead the plaintiff, and that, by reason of defendant's failure to give to plaintiff his proper credits, plaintiff was misled, and plaintiff did pay a greater sum for defendant's interest than he would have paid if he had known the true condition of the books." This comprises a fair statement of the excuse which has been pleaded by the respondent to justify his negligence in the exercise of ordinary diligence. We confess that we cannot perceive any grounds on which Pierce is entitled to recover the amount of this excess from Ten Eyck. Mr. Justice Field, in *Slaughter's Adm'r v. Gerson*, 13 Wall. 383, lays down the law in one sentence: "A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness."

Judgment was entered against the appellant for the sum of $75, through the following finding of the referee: "That it was agreed between plaintiff and defendant that during an absence of defendant, while out of the Territory for three months, between December, 1883, and April, 1884, the firm should be credited with $50 per month to compensate for defendant's loss of time; that no such credit was ever given." This demand is governed by the views which have been expressed in respect to the preceding item. When Ten Eyck was absent, it was the duty of the person in charge of the book, under the direct command of Pierce, to put in black and white the figures referring to this agreement. We cannot understand why the appellant is to be held responsible for this omission, or why the respondent did not look after the business in which he was an equal partner. The claim must meet the fate of its predecessor.

It is therefore adjudged that the judgment be reversed, with costs, and that the cause be remanded, with directions to the court below to enter a judgment for the plaintiff for the sum of $211.25, and interest thereon from the twenty-third day of February, A. D. 1888.

HARWOOD, J., and DE WITT, J., concur.