REED v. WOOD.

No. 30024. Feb. 17, 1942.

Rehearing Denied March 17, 1942.

*123 P. 2d 275.*

Thompson & Braly, of Ada, for plaintiff in error.

R. E. Criswell, of Seminole, and David A. Kline, of Oklahoma City, for defendant in error.

BAYLESS, J. L. K. Reed sued B. G. Wood in the district court of Seminole county, and Wood cross-petitioned for relief. Judgment was rendered against Reed on his petition and in favor of Wood on his cross-petition, and Reed appeals.

Reed, Wood, and Watson formed a drilling partnership, Reed having a half interest and Wood and Watson a fourth each. Wood and Watson were stockholders in and operators of a machine company, which was a corporation and in which Reed had no interest. At the formation of the partnership Wood and Watson furnished certain equipment and did work in putting it in a state of use and Reed furnished money and other equipment which he obtained by virtue of his personal credit. Reed was thereafter successful in using the rotary drilling outfit thus assembled and was apparently in the process of realizing sufficient profit from the drilling operations to pay the rotary drilling outfit out for the parties. However, some friction or dissatisfaction seems to have arisen in the mind of Wood and he and Reed negotiated with respect to this and Reed ultimately purchased Wood's interest in the partnership. We may say at this point that there is an issue respecting the interest owned by Watson. That is to say: Wood contended that, in reality, Watson owned only one share of stock in the corporation, for corporate purposes only, and no interest in the partnership, because either Wood or the corporation actually owned the fourth of Wood and the fourth spoken of as belonging to Watson. We may observe here that our statutory definition of a partnership precludes the corporation as a member of the drilling partnership, section 11624, O. S. 1931, 54 O. S. A. § 1. Prior to the beginning of the negotiations between Reed and Wood, Reed received a letter from a collection agency calling attention to the fact that the agency had several claims against the corporation for collection and it could get no satisfaction from the corporation with respect thereto, that it was understood that the corporation or Wood had some interest in the drilling of the wells which the drilling partnership was interested in, and unless some arrangements were made to pay the corpora-

tion's bills the collection agency would be forced to bring suit and garnishee the proceeds due the drilling partnership. Reed's contention is, and it is supported by ample evidence, that this letter caused him great agitation of mind because of the slender thread upon which the drilling partnership was operating, and he feared that any interference with the payment to it of the funds to which it was entitled would be disastrous. He testified, and it is admitted, that the drilling partnership was in no wise responsible for the obligations of the corporation conducting the machine company. Reed testified that he consulted with Wood about this letter, that Wood was indifferent and stated that he would do nothing with respect to the obligations mentioned in the letter. Reed therefore became anxious to purchase Wood's interest and get him out of the partnership, as he testified, to protect the partnership from the threats contained in the letter. He testified that he made Wood a give-and-take offer for the partnership interest, valuing a half interest at $10,000 and a fourth interest at $5,000, which offer Wood rejected. After negotiation through Wood's agent, Reed agreed to pay Wood $5,000 in cash and gave notes for $3,000 for Wood's interest in the partnership. Thereafter, when Reed tendered Wood the $5,000 in cash Wood refused to accept it, backed out of the deal, and insisted that he have $6,000 in cash and notes for $3,000. Reed thereupon paid Wood $6,000 in cash and gave the notes. Reed's contention is, and the evidence is such as to make it virtually admitted, that the letter was a hoax. The evidence shows that Wood, who has practiced law, prepared and sent the letter to Reed for the purpose of bringing pressure upon him in connection with the dissolution of the partnership, and the evidence shows that Wood said he hoped the letter would have that effect. Reed's contention is that he was forced to pay Wood a sum of $9,000 for Wood's share in the partnership and that this was $4,000 in excess of the value of his fourth interest. He argues that the conduct of Wood with respect to the letter amounted to fraud and unfair conduct and breached the fiduciary relationship that exists between partners. Sections 11632 and 11633, O. S. 1931, 54 O. S. A. §§ 9 and 10. Reed seeks to have the $3,000 of notes canceled and to recover $1,000 in money. Wood denies Reed's contention in his pleadings, insists that he owned a half interest in the partnership and that he sold it for less than he was entitled to; insists that the other accounts were included in the figure of $9,000 and were settled thereby, by reason of which $9,000 does not represent an estimate of the value of the interest which he sold, and he seeks judgment on his notes.

We are met at the threshold of our consideration with Wood's contention that if the plaintiff's action be considered in the light of rescission of the contract settling the partnership affairs, there can be no recovery by Reed because he did not restore or offer to restore that which he received from Wood by virtue of the transaction. We are of the opinion, and the authorities bear out our opinion, that where one partner has induced the other partner, in the settlement of the partnership's account or the purchase by one partner of the other partner's interest, to give more or take less than was proper, he may maintain an action for damages or otherwise therefor, and that it is not necessary to proceed in equity for rescission or cancellation for relief. 47 C. J. 796, § 241; 20 R. C. L. 931, §§ 148, 149, 150, and pocket supplement, and the annotation in 21 A. L. R. 21 et seq., and Pierce v. Ten Eyck, 9 Mont. 349, 23 P. 423. Therefore, in consideration of the mutual fiduciary relationship existing between partners, Reed is entitled to maintain an action against Wood, his former partner, for relief from the breaches of duty Wood owed to him, without rescinding.

We are of the opinion that the evidence clearly discloses that Wood abused the confidence that Reed had a right to place in him, that he deceived and misled Reed in the preparation and mailing of the letter which he did, and that he brought an unfair and inequitable pressure to bear upon Reed and accomplished

the sale of his interest in the partnership to Reed under pressure. However, the difficulty in determining the extent to which this conduct on the part of Wood caused Reed any financial loss arises from the contradictory evidence that is in the record before us. As stated, the partnership started with virtually nothing and it was the hope of the partners to pay the drilling equipment clear by its earnings. It is clear that while the drilling equipment was not yet owned outright, that is, it had not cleared itself by its earnings, it was in a fair way to do so. Witnesses valued the equipment at from $20,000 to $30,000, but there is no precise showing of the state of the debts against it. Allowing its value without considering the debts against it, the fourth interest in the partnership property, also in considering possible future earnings, would be valued from $5,000 to $7,500. If Wood actually owned a half interest instead of a fourth, he sold for less than his half interest might reasonably have been said to be worth. In this connection we are of the opinion that the trial court's judgment finding by implication that Wood was the owner of a half instead of a fourth is clearly against the weight of the evidence. Reed and Watson both contradicted Wood on this point. If it be considered that Wood insisted that Reed include in the purchase price some $3,200 which Wood insisted the drilling partnership owed the corporation, this portion of the $9,000 would be without consideration because the debt owing by the partnership to the corporation was no outright personal obligation either of Reed on the one hand or Wood on the other. We come now to what we think the almost conclusive aspect of Wood's misconduct in this case. When he had agreed to take $5,000 in cash and $3,000 in notes, he was able thereafter, by virtue of the pressure he was exerting on Reed, to renege on his agreement and exact another $1,000 from Reed.

We are not unmindful of the fact that partners, in the adjudgment of partnership affairs either by dissolving the partnership and dividing the assets or by the sale by one partner to the other, are free to value their property according to their respective notions, and that it is not a breach of the partnership relationship to differ with respect thereto. We think it fair to say that, in view of the basis upon which these men started the partnership and the reasonable expectation of the future, it was a matter of considerable speculation what the interest of Wood in the partnership was reasonably worth. Insofar as he was the owner of this interest, and had the right to sell it, he was free to dicker with Reed at all times, of course, observing the duty to "act in the highest good faith toward his copartners." See Farwell v. Wilcox, 73 Okla. 230, 175 P. 936; Waller v. Henderson, 135 Okla. 231, 275 P. 323, and Anderson v. Whitener, 127 Okla. 284, 261 P. 156.

Our statute, section 11633, O. S. 1931, 54 O. S. A. § 10, says:

"In all proceedings connected with the formation, conduct, dissolution and liquidation of the partnership, every partner is bound to act in the highest good faith toward his copartners. He may not obtain any advantage over them in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind."

It is difficult to find more comprehensive language than is used in this section of our statutes nor language stating a higher duty between fiduciaries. Section 11632, O. S. 1931, 54 O. S. A. § 9, says:

"The relations of partners are confidential. They are trustees for each other as to partnership property."

These sections of our statute were applied by us in the decision in Thomas v. Mathis, 181 Okla. 1, 72 P. 2d 484, wherein we pointed out, "Here it is undisputed that the Thomases were trying to rid themselves of Mathis." We said also, referring to the statutory rule of good faith, "the rule of good faith is most especially required to be observed where one partner is trying to get rid of another."

These observations are particularly applicable to the case before us, because

it is expressly conceded by Wood that he was trying to terminate the partnership relation existing between him and Reed, and he also expressly admitted sending the letter with the avowed purpose of bringing pressure upon Reed. As will be noted, our statute explicitly forbids the bringing of pressure by one partner upon another.

In view of the matters which we have discussed heretofore, we feel that the trial court's judgment denying Reed any recovery and granting Wood judgment upon his notes is clearly against the weight of the evidence and must be reversed. This court does not interfere with judgments of the lower court, that are rendered by trial judges, in actions equitable in their nature, without first weighing the evidence and determining whether the judgment complained of is clearly against the weight of the evidence. Our consideration of the record in this case convinces us that the trial court's judgment is clearly against the weight of the evidence.

The judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

WELCH, C. J., and RILEY, OSBORN, GIBSON, HURST, and ARNOLD, JJ., concur. CORN, V. C. J., and DAVISON, J., absent.