Vance BOOKER, Plaintiff in Error,

v.

Clifford LAWMASTER, Defendant in Error.

No. 39596.

Supreme Court of Oklahoma.

July 10, 1962.

John Adkison, Dale J. Briggs, Tulsa, for plaintiff in error.

Paul E. Simmons, Broken Arrow, for defendant in error.

BERRY, Justice.

The parties, who occupy the same relative position here as in the trial court, will be referred to as they appeared in the trial court.

On September 2, 1958, defendant owned an oil and gas lease covering the minerals underlying the N/2 of SE/4 of Sec. 18, T. 18N, R. 15E, Waggoner County, Oklahoma. He also owned an oil and gas lease covering the S/2 of the described quarter. Prior to said date he had drilled on the leased premises a test well for oil and gas to a depth of approximately 1300 feet, which well was completed as a gas well. It was estimated that the well would produce about 4 million cubic feet of gas a day but for lack of a market the well was capped.

On the above mentioned date, defendant assigned to plaintiff an undivided one-half interest in the leases. The defendant apparently reserved his interest in the gas well, provided, however, that if a market for the gas was found, plaintiff, upon paying defendant $1500.00, was to have an undivided one-half interest in the gas well.

Plaintiff and defendant entered a partnership and subsequently drilled six test wells on the leases. Three of the wells failed to produce either oil or gas. The remaining three wells, which are described as the "Allen No. 2", "Allen No. 3", and "Kennard No. 2", produced oil and gas. There was no market for the gas.

In April or May, 1959, defendant stated to plaintiff that the leases could probably be sold for $80,000.00. Plaintiff advised defendant that he did not wish to sell his interest. In the fall of 1959, defendant stated to plaintiff that he had learned of a person who he thought would buy defendant's interest in the leases; that plaintiff inquired of defendant the price that defendant would ask for his interest; that upon being told that defendant would ask $32,000.00 plaintiff stated that he was interested in buying at said figure; that in the negotiation which followed defendant stated to plaintiff that (1) the Allen No. 2 Well was making 4 barrels a day but in fact it was only making from 1 to 2 barrels of oil a day; that (2) the Allen No. 3 Well was making 12 barrels of oil a day and would produce 18 barrels a day if placed on an "electric pump"; that the well in fact was making 6 barrels a day and did not make more upon an electric pump being installed; that (3) the Kennard No. 2 Well would make 50 barrels of oil a day if "opened up" but in fact the well would produce no more than 25 barrels a day; that (4) defendant failed to tell plaintiff that the tubing in the Allen No. 3 Well was no longer 100 feet from the bottom of the hole and that it in fact was set on the bottom of the hole; that (5) defendant advised plaintiff that all necessary arrangements had been made for a line to transmit electric current to the leases and that electricity would be available within a very short time; that in fact such arrangements had not been made and electricity was not available for several months.

Plaintiff says that defendant had drilled the wells and operated the producing wells; that he (plaintiff) was a resident of California and was unfamiliar with the facts bearing upon the mentioned statements and representations of defendant; that believing the facts to be as stated by defendant he agreed to buy defendant's interest in the leases for $32,000.00; that on September 21, 1959, he paid defendant $7,500.00 in cash and executed a promissory note secured by a mortgage covering the leasehold for the balance of the purchase price and that for said consideration defendant assigned to him defendant's interest in the leases which assignment included the gas well.

Plaintiff maintains that the statements and representations made by defendant to him, which have heretofore been summarized, were material; that they were false and untrue and constituted fraudulent conduct on defendant's part; that as a result of same plaintiff was induced to purchase defendant's interest in the leases. Plaintiff seeks to rescind the oral sales contract of September 21, 1959 and cancellation of the note and mortgage given in connection therewith. He also seeks $1500.00 as damages allegedly resulting from loss of production during the period that electricity was not available following sale.

Following trial of case to the court, judgment was entered in defendant's favor. From order of the trial court denying plaintiff's motion for new trial, he perfected this appeal.

Plaintiff contends that "the judgment of the trial court is against the clear weight of the evidence"; that "Defendant induced the plaintiff to purchase defendant's interest in the leases by false representations and omissions of material facts" and that "Defendant failed to overcome the presumption that the transaction was void and failed to sustain his burden of proving his

utmost good faith and that no advantage was taken of plaintiff."

We will first consider evidence relating to the Allen No. 2 Well.

The testimony shows that there was but a small show of oil in the Allen No. 2 Well and for said reason plaintiff and defendant did not attempt to complete the well as a producer; that upon a third person completing the well and placing it on production it produced about 2 barrels of oil a day. It appears that the third person took one-half the production in consideration of labor and possibly equipment furnished in placing the well on production. It further appears that by the time this well was completed as a producer, the Allen No. 3 had also been placed on production. Oil from both wells was flowed into the same tank and daily production from each well was not determined.

Plaintiff testified in substance that he "thought" the well would produce 4 barrels of oil daily; that defendant "always" told him that the daily production was about 4 barrels. Plaintiff, however, testified that he "knew it was a little well, I thought it was making about four barrels a day, but I heard him (defendant) say it was making two, but I never did know what it was making."

■ There is no evidence that defendant told plaintiff during the negotiations which led to the sale that plaintiff seeks to rescind, that the well would produce any given amount of oil. In view of this fact and the further fact that plaintiff knew that it was a "little well", we add, so little that plaintiff and defendant elected not to go to the expense of placing it on production, and plaintiff's admission that defendant told him at some time preceding the negotiations that the well was making only two barrels of oil, the fact that the well made only 1 to 2 barrels a day following September 21, 1959, does not tend to prove false or fraudulent conduct on defendant's part as to the Allen No. 2 Well.

As to the Allen No. 3 Well, defendant testified that during the negotiations that led to the sale in controversy, that he pumped the well once each morning and that it produced 6 barrels of oil; that once in a while he would return in the evening and pump the well and obtain 6 barrels of oil.

Plaintiff testified that defendant stated to him that the well would produce 12 barrels of oil a day and 18 barrels if produced through use of an "electric pump".

■ As we understand defendant's testimony, he stated in substance that the well usually produced 6 barrels of oil daily but on occasions produced 12 barrels daily. The trial court apparently so construed his testimony, which testimony was apparently accepted as true. In view of this, it cannot be said that the fact that the daily production from the well was only 6 barrels a day after September 21, 1959, shows that defendant made false and fraudulent representations concerning the amount of oil that the well would probably produce.

■ Defendant did not deny plaintiff's testimony to the effect that if an electric pump were installed at the Allen No. 3 Well, the daily production therefrom would be approximately 18 barrels of oil. An electric pump had never been used on the well and for said reason defendant's statement relative to production following use of such a pump represented his opinion as distinguished from a statement of fact. At p. 781, Sec. 27, "Fraud and Deceit", 23 Am. Jur., this is said:

"As a general rule, in order to constitute actionable fraud, a false representation must relate to a matter of fact which either exists in the present or has existed in the past. It must also relate to a fact which is susceptible of knowledge; otherwise, there is nothing in relation to which the person making it could state what he knew to be untrue.

"The principle is fundamental that fraud cannot be predicated upon what amounts to, as a matter of law, or in factual cases is found by the triers of

the facts to be, the mere expression of an opinion, which is understood by the representee to be only such or cannot reasonably be understood to be anything else. This rule applies to representations in regard to matters of estimate or judgment. * * * "

■ As to the Kennard No. 2 Well, the record shows that from the time the well was completed as a producer to September 21, 1959, the well produced that amount of oil which was permissible under the rules and regulations of the Oklahoma Corporation Commission; that gas pressure was such that oil flowed to the tanks; that the well was never permitted to flow to its full capacity because of the large volume of gas produced with the oil. It is therefore apparent defendant's statement to the effect that the well would produce 50 barrels of oil if permitted to flow to capacity was but the expression of an estimate and opinion on his part and as such did not constitute a representation of a fact.

As to the depth that the tubing was set in Allen No. 3 Well, the record shows that the position of the tubing in the well had been changed several times prior to September 21, 1959; that at one time plaintiff knew that the tubing was set 100 feet from the bottom of the hole but that it was set nearer the bottom as of date that plaintiff acquired defendant's remaining interest in the lease. The record fails to show that defendant made any statement to plaintiff concerning the depth that the casing was set at date of sale which plaintiff says is without significance since he asked defendant "if he had done anything, or anything he should have told me about the wells and he said 'no'."

■ Plaintiff asserts that if the well were pumping oil with the tubing set 100 feet off the bottom this would mean that there was as much as 100 feet of oil in the hole; that, as we understand plaintiff, the fact that the casing was set on the bottom of the hole tends to show that production from the well was not such as to cause the oil to rise 100 feet in the casing.

Defendant testified that when a pump was first placed on the well, the casing was set on the bottom of the hole; that the well would not pump oil; that the tubing was raised and oil was pumped; that he subsequently concluded that the well was not pumping properly and the tubing was again raised and the well pumped satisfactorily for a while; that again concluding the well was not pumping properly the tubing was lowered to a joint of tubing off the bottom of the hole and apparently this was the position of the tubing at the time of the complained-of sale. Defendant testified further in substance that when a well ceases to pump oil or to pump satisfactorily, the tubing is often raised or lowered in an effort to restore production.

In the instant case no evidence was introduced relative to the depth of the formation (dutcher) from which the wells produced or the porosity of the formation or the amount of oil that either well would probably produce or the value of the leasehold estate as of September 21, 1959. In the light of the testimony and in the absence of evidence to the effect that the depth at which tubing was set in the well would tend to indicate the amount of oil that the well would produce, we are of the opinion that defendant was not guilty of fraud in failing to advise plaintiff the depth at which the tubing was set.

As to plaintiff's contention relative to the line for electricity, the evidence shows that defendant was of the opinion that the leases, which were not introduced in evidence, were so worded as to grant to lessees an easement for said purpose. The evidence, however, shows that the utility company would not build the line until an easement was obtained from the lessors who for a period refused to grant such an easement.

Plaintiff testified that defendant told him "that he had the right to put the" line in; that "he would put the (line) in"; that plaintiff was to furnish the material and defendant the labor and they would divide the charge made by the utility company. He further testified that defendant had left with

one of the lessors, Kennard, a proposed easement but that Kennard had not executed it.

■ The evidence shows that after some delay Kennard executed the easement or the utility company concluded that the leases served to grant an easement. In any event, the line was built and electricity was available in January, 1960. The evidence shows further that in building the line defendant furnished the labor which he had agreed to furnish and paid one-half the charge made by the utility company for making electricity available.

We are of the opinion that the evidence fails to show fraud on defendant's part as to the line being built and electricity furnished. As to damages, the plaintiff offered no evidence showing that the delay in installing the line resulted in oil or gas being drained from the leases. In brief, that the delay in fact served to damage him.

There remains for consideration plaintiff's contention to the effect that a confidential relationship existed between him and defendant and that the burden therefore rested upon defendant to show that he exercised the "utmost good faith and that no advantage was taken of plaintiff." Citing Reed v. Wood, 190 Okl. 169, 123 P.2d 275.

■ Plaintiff represents that he had but limited knowledge of the oil business and only such knowledge of the wells on the leases and says that the converse was true of defendant. While this would tend to develop that a confidential relationship existed between plaintiff and defendant, the evidence in fact fails to show that as of September 21, 1959, the fair cash value of defendant's remaining interest in the leases was less than $32,000.00. In brief, the evidence fails to show that plaintiff was cheated or fails to show that he did not get value received. We are, therefore, of the opinion that Reed v. Wood, supra, does not support the rule contended for by plaintiff and is in fact not applicable.

■ This is a case of equitable cognizance. In such cases we have repeatedly held that while we will review the record, we will not reverse the judgment unless it is clearly against the weight of the evidence. See Buck v. Caldwell, Okl., 340 P.2d 485.

After having carefully reviewed the record, we have concluded that the judgment of the trial court is not clearly against the weight of the evidence.

Affirmed.

BLACKBIRD, V. C. J., and HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.

WILLIAMS, C. J., and WELCH and DAVISON, JJ., concur in result.