248 F.2d 915
 John J. VAN ANDEL, Appellant,
v.
Theoren Charles SMITH, Theoren Per Lee Smith, Amelia E.
Smith, Kitty Helen Smith, individually; and the partnership
known as T. C. Smith & Sons, composed of the said Theoren
Charles Smith, Theoren Per Lee Smith, Amelia E. Smith, Kitty
Helen Smith; Stanley W. Prisner, as Trustee in Bankruptcy
for said individuals and said partnership; Hallack and
Howard Lumber Company, a corporation; George Wafer, doing
business as J. J. Wafer Plumbing and Heating Co.; and W. D.
Woodside Company, a co-partnership consisting of Forrest S.
Woodside, Eva Woodside and Mildred E. Woodside, Appellees.
 No. 5601.
 United States Court of Appeals Tenth Circuit.
 Oct. 23, 1957.
 
 Carl A. Wyers, Denver, Colo. (Wagner & Wyers, Denver, Colo., on the brief), for appellant.
 Richard P. Hall, Denver, Colo. (Phelps & Wittelshofer, James D. Doyle, and Emory L. O'Connell, Denver, Colo, on the brief), for appellees.
 Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The appellant Van Andel seeks relief from an order of the Referee in Bankruptcy for the District of Colorado holding that he was a member of the partnership known as T. C. Smith & Son and that the partnership was bankrupt. An appropriate petition for review was denied by the district court.
 
 
 2
 Hallack and Howard Lumber Company, /1/ George Wafer, doing business as J. J. Wafer Plumbing and Heating Co.,[2] and W. D. Woodside Company, a partnership, /3/ filed a petition for the involuntary adjudication as bankrupts of T. C. Smith & Son, a partnership, John J. Van Andel, Theoren Charles Smith, Theoren Per Lee Smith, Amelia E. Smith, and Kitty Helen Smith. After answers were filed by the alleged bankrupts, a hearing was held on the issues raised thereby. The fact findings of the referee are not controverted.
 
 
 3
 Prior to April 21, 1955, the four Smiths had carried on a partnership contracting and building business under the name of T. C. Smith & Son. On that date a written partnership agreement was entered into between the four Smiths and Van Andel. On July 9, 1955, the partnership was dissolved by mutual agreement. There was no accounting among the partners and no winding up of the partnership business. Van Andel was induced to enter into the partnership by false representations made to him by two of the Smiths. The referee specifically found 'that John J. Van Andel was induced to become a partner through fraud.'
 
 
 4
 Neither the petition for involuntary adjudication nor the answers thereto are made a part of the record. In the memorandum opinion of the referee it is stated that:
 
 
 5
 'The petitioning creditors aver that their debts were contracted, as to Hallack and Howard, between August 29 and October 31, 1955, as to Wafer between March 12 and July 12, 1955, and as to Woodside between April 1 and December 1, 1955.'
 
 
 6
 On the issues raised by the petition and the answers the referee found that as to Van Andel there were not the required three petitioning creditors and also Van Andel was solvent. The petition as to him as an individual was dismissed. The four Smiths and the partnership were found insolvent and adjudged bankrupt. With reference to the claims of the petitioning creditors, the referee in his memorandum opinion stated:'* * * during that period (April 21, 1955 to July 9, 1955) the debts due Wafer and Woodside were contracted but not the debt due Hallack and Howard which was contracted after July 9, 1955; that each of the petitioning creditors had dealt with Theoren Charles Smith and Theoren Per Lee Smith prior to April 21, 1955, and knew them as a firm doing business as T. C. Smith & Son or T. C. Smith & Sons; and that, as to the petitioning creditors, when their debts were contracted, John J. Van Andel was unknown to them as a partner and was so far unknown and inactive in the affairs of the partnership that the business reputation of the partnership could not be said to have been in any degree due to his connection with it.'
 
 
 7
 As to Van Andel's liability as a partner, the referee held:
 
 
 8
 'However, as a partner, John J. Van Andel may be liable personally to Wafer and Woodside under the provisions of Section 104-1-39, 1953 Colorado Revised Statutes. This section recognizes and affirms the rights of third persons in cases of partnerships induced by fraud. Whether third persons, other than Wafer and Woodside, are precluded under Section 104-1-35(2)(a)(b), is a question of fact to be determined if and when it arises. As to Wafer and Woodside there is no present occasion to determine whether personal liability on the part of John J. Van Andel exists and decision of that question must be reserved for the determination of a proper forum, perhaps in an action or actions on the part of the Trustee in Bankruptcy hereafter to be selected.'
 
 In substance the referee held:
 
 9
 1. Van Andel as an individual was not bankrupt.
 
 
 10
 2. The partnership composed of Van Andel and the four Smiths was bankrupt.
 
 
 11
 3. The four Smiths as individuals were bankrupt.
 
 
 12
 4. Van Andel is not personally liable as an individual or as a partner to Hallack and Howard.
 
 
 13
 5. Van Andel may be liable personally to Wafer and Woodside, the existence of that liability, if any, to be determined later in a proper forum.
 
 
 14
 6. The liability of Van Andel to other creditors 'is a question of fact to be determined if and when it arises.'
 
 
 15
 The only person complaining of the referee's actions is Van Andel. He raises two points, first, that the adjudication of bankruptcy of the partnership consisting of him and the four Smiths is erroneous because the admitted presence of fraud makes the partnership agreement void ab initio and relieves him of any liability to creditors of the partnership and, second, there was an insufficient number of petitioning creditors to permit adjudication of the partnership as a bankrupt because the Hallack and Howard debt was incurred after the dissolution of the partnership.
 
 
 16
 In the absence of controlling federal statutes the substantive rights of the parties are governed by the law of Colorado.[4] Colorado has adopted the Uniform Partnership Act. Section 104-1-39 of the Colorado Revised Statutes 1953 provides:
 
 
 17
 'Where a partnership contract is rescinded on the ground of the fraud or misrepresentation of one of the parties thereto, the party entitled to rescind is, without prejudice to any other right, entitled:
 
 
 18
 '(1) To a lien on, or right of retention of, the surplus of the partnership property after satisfying the partnership liabilities to third persons for any sum of money paid by him for the purchase of an interest in the partnership and for any capital or advances contributed by him; and'(2) To stand, after all liabilities to third persons have been satisfied, in the place of the creditors of the partnership for any payments made by him in respect of the partnership liabilities; and
 
 
 19
 '(3) To be indemnified by the person guilty of the fraud or making the representation against all debts and liabilities of the partnership.'
 
 
 20
 There are no Colorado decisions construing this statute. As we read it, the statute means that even though the partnership contract was procured by the fraud of one of the partners, nevertheless the partnership entity is created and until it is dissolved the defrauded partner is liable for debts of the partnership to third persons incurred during the life of the partnership. /5/ The phrase 'without prejudice to any other right' does not permit the defrauded partner to plead the fraud as a bar to liability to creditors. If that were true, subparagraphs (1), (2) and (3) would be meaningless. While a defrauded partner may rescind for fraud,[6] he remains liable to creditors who dealt with the partnership during its existence. /7/
 
 
 21
 In support of his argument that the partnership contract was void ab initio because of the fraud practiced on him, appellant cites numerous authorities that a person induced by fraud to enter into a partnership relationship may declare the partnership agreement void ab initio. None of these cases is applicable because none involves the rights of third parties who became creditors between the inception and dissolution of the partnership. We conclude that the referee and the trial court were right in holding that Van Andel became a partner and was a member of the partnership between April 21 and July 9, 1955, with whatever legal responsibilities that might entail.
 
 
 22
 On the matter of the sufficiency in number of petitioning creditors,[8] it is agreed that the debt of Hallack and Howard was incurred after dissolution. However, upon dissolution there was no accounting and no winding up of the partnership affairs. Section 104-1-35 of the Colorado Revised Statutes 1953, provides in its subparagraph (1) that after dissolution a partner can bind a partnership, except under circumstances which are not shown to have any applicability here,
 
 
 23
 '(b) By any transaction which would bind the partnership if dissolution had not taken place, provided the other party to the transaction
 
 
 24
 '(i) Had extended credit to the partnership prior to dissolution and had no knowledge or notice of the dissolution, or
 
 
 25
 '(ii) Though he had not so extended credit, had nevertheless known of the partnership prior to dissolution, and, having no knowledge or notice of dissolution, the fact of dissolution had not been advertised in a newspaper of general circulation * * *.'
 
 
 26
 Subparagraph (2) of section 104-1-35 provides:
 
 
 27
 '(2) The liability of a partner under subsection (1)(b) shall be satisfied out of partnership assets alone when such partner had been prior to dissolution;
 
 
 28
 '(a) Unknown as a partner to the person with whom the contract is made; and
 
 
 29
 '(b) So far unknown and inactive in partnership affairs that the business reputation of the partnership could not be said to have been in any degree due to his connection with it.'
 
 The referee has specifically found that:
 
 30
 '* * * as to the petitioning creditors, when their debts were contracted, John J. Van Andel was unknown to them as a partner and was so far unknown and inactive in the affairs of the partnership that the business reputation of the partnership could not be said to have been in any degree due to his connection with it.'
 
 
 31
 Hence, Van Andel is not personally liable to Hallack and Howard whose debt was created after partnership dissolution. However, the partnership is liable if one of the requirements of section 104-1-35(1)(b) is satisfied. The statute requires, first, the extension of credit to the partnership prior to dissolution and no knowledge of dissolution, or second, without extension of credit prior to dissolution, knowledge of the partnership prior thereto and no knowledge of dissolution and no newspaper publication of the fact of dissolution.
 
 
 32
 The difficulty is that the referee made no findings showing that either requirement of section 104-1-35(1)(b) was satisfied. He found:
 
 
 33
 '* * * during that period (April 21, 1955 to July 9, 1955) the debts due Wafer and Woodside were contracted but not the debt due Hallack and Howard which was contracted after July 9, 1955; that each of the petitioning creditors had dealt with Theoren Charles Smith and Theoren Per Lee Smith prior to April 21, 1955, and knew them as a firm doing business as T. C. Smith & Son or T. C. Smith & Sons; * * *.'
 
 
 34
 The reference is to a situation existing prior to April 21, 1955. The partnership which included Van Andel did not come into existence until that date. Hence the findings do not show the Hallack and Howard debt to be a partnership liability within the provisions of section 104-1-35(1)(b). It may be that the facts are sufficient to establish such a liability. All we say is that the skimpy record now before us fails to show that the Hallack and Howard debt is a liability of the partnership composed of Van Andel and the four Smiths. In the absence of such a showing the petition for involuntary adjudication of that partnership is presented by an insufficient number of petitioning creditors.
 
 
 35
 As our conclusion is that the adjudication of the partnership of Van Andel and the four Smiths must be set aside and the case remanded with directions that a determination be made as to whether the Hallack and Howard debt is a partnership liability within the purview of section 104-1-35(1)(b), one other matter should be mentioned. 11 U.S.C.A. 95, sub. f provides that creditors other than the original petitioners may at any time enter their appearance and join in the petition. Canute S.S. Co. v. Pittsburgh & West Virginia Coal Co., 263 U.S. 244, 248, 44 S.Ct. 67, 68 L.Ed. 287, holds that under section 95, sub. f a petition cannot be joined in after it has been dismissed and is no longer pending and must be joined in before adjudication is made. Under the circumstances of this case, the petition is still pending and there has been no valid adjudication. Hence other creditors may join in the petition if they are so advised.
 
 
 36
 The judgment is reversed and the case is remanded for further proceedings in conformity with the views expressed herein.
 
 
 
 [1]
 Hereinafter referred to as Hallack and Howard
 
 
 [2]
 Hereinafter referred to as Wafer
 
 
 [3]
 Hereinafter referred to as Woodside
 
 
 [4]
 Bryant v. Swofford Bros. Dry Goods Co., 214 U.S. 279, 29 S.Ct. 614, 53 L.Ed. 997; Collier on Bankruptcy, Vol. 4, 14th Ed., p. 951; cf. In re Dederick, 10 Cir., 91 F.2d 646
 
 
 [5]
 Cf. 68 C.J.S. Partnership 13, pp. 422-423
 
 
 [6]
 Oteri v. Scalzo, 145 U.S. 578, 588, 12 S.Ct. 895, 36 L.Ed. 824; Knapp v. First Nat. Bank & Trust Co., 10 Cir., 154 F.2d 395, 398
 
 
 [7]
 While there appear to be no cases considering the applicability of section 39 of the Uniform Partnership Act to the rights of third parties, two Massachusetts decisions, decided prior to the Uniform Act in Massachusetts, sustain as a matter of general partnership law the rule above stated. See Perry v. Hale, 143 Mass. 540. 10 N.E. 174, and Grossman v. Lewis, 226 Mass. 163, 115 N.E. 236
 
 
 [8]
 There is nothing in the record to suggest that the petition for adjudication might have been presented by less than three creditors. See 11 U.S.C.A. 95 subs. b, d