In re HEDGED INVESTMENTS
ASSOCIATES, INC., Debtor.

Harvey SENDER, Trustee,
Plaintiff/Appellant/Cross–
Appellee,

v.

Fred HANNAHS, Defendant/Appellee,
Cross–Appellant.

Civ. A. No. 93–M–1632.
Bankruptcy No. 90–15399 PAC.
Adv. No. 92–1935 CEM.

United States District Court,
D. Colorado.

Oct. 12, 1994.

Bonnie A. Bell, Katch, Sender & Wasserman, P.C., Denver, CO, for plaintiff.

Joseph A. Cope, Frascona & Joiner, Boulder, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

MATSCH, Chief Judge.

These are cross appeals from a judgment for the plaintiff, Harvey Sender, Trustee, against the defendant Fred Hannahs in the sum of $6,500.79 as a recovery of a preferential payment under 11 U.S.C. § 547(b).

The defendant, Fred Hannahs, invested $100,000 in April, 1980, in Hedged–Investments Associates, a limited partnership, in which Hedged–Investments Associates, Inc. (Hedged, Inc.) was a general partner. He later invested another $20,000. The business of Hedged, Inc. was to raise money through the sale of interests in limited partnerships and use that money for investments in various types of securities. Routinely, the investors in these limited partnerships were promised a right to withdraw their funds, virtually upon demand, with guaranteed earnings from profits made by Hedged, Inc. in its investments. There is no dispute that Hedged, Inc. was operating a Ponzi scheme. The profits regularly being reported were false. By 1978, Hedged, Inc. was insolvent in that its assets had a value less than its liabilities. The true source of funds paid to the inves-

tors as earnings were the funds obtained from the sale of partnership interests to later investors. Early investors received what they were promised. Hannahs was paid a total of $227,000. The bankruptcy petition for Hedged, Inc. was filed on August 30, 1990. Within the year preceding that filing, Hannahs received the following four payments:

| Check Date | Amount |
|---|---|
| 7/1/90 | $6,500.79 |
| 4/1/90 | 5,847.12 |
| 1/1/90 | 309.98 |
| 10/1/89 | 7,504.56 |

The Trustee sought to recover these four payments as fraudulent transfers recoverable under 11 U.S.C. § 548(a)(1). The bankruptcy judge found that each of these payments to Hannahs was made with the intent to hinder, delay and defraud creditors of Hedged, Inc. He also found that the defendant received the payments in good faith and for value thereby permitting Hannahs to retain the payments under 11 U.S.C. § 548(c). The trustee does not dispute the good faith of the defendant. The asserted error is in the determination that there was an exchange of value to the debtor for such transfers. The bankruptcy judge held that the promises and representations made by Hedged, Inc. concerning continuous positive earnings were relied on by Hannahs who left the funds in his account rather than acting to protect his own investment. The following paragraph summarizes the analysis made by the bankruptcy judge on this issue:

> The activities of Hedged, Inc., present the classic case for estoppel. *Chamberlain v. Poe*, 127 Colo. 215, 256 P.2d 229 (Colo. 1953). The activities of Hedged, Inc., created a claim against it on behalf of the Defendant for the value of what was promised. The liability of Hedged, Inc., on that claim is a debt which was satisfied by the payments which were made in the last year. The satisfaction of that antecedent debt is "value" for purposes of section 548(c). Thus, the Court concludes that the Plaintiff's claims premised under section 548 must be denied.

█ The bankruptcy judge erred in applying promissory estoppel to this case. It is difficult to define the relationships of the parties involved in a Ponzi scheme by traditional legal principles. The most comprehensive effort known to this court was that made by the District Court in Utah in the lengthy opinion reported as *In re Independent Clearing House Co.*, 77 B.R. 843 (D.Utah 1987). There, the court found that the investors had a right of rescission and restitution because of the fraudulent inducements. Their recovery, however, would be limited to the amount of the investment. The payments in excess of that investment constitute a performance of a contract which the courts would not enforce because public policy prevents the court's participation in a criminal enterprise. As the court noted at page 857 of the opinion, "to allow an undertaker to enforce his contract to recover promised returns in excess of his undertaking would be to further the debtors' fraudulent scheme at the expense of other undertakers."

Thus, Hannahs had no legal right to enforce payment of the promised returns on his investment. The same policy reasons preventing enforcement of the promised payments in an action at law defeats the application of the doctrine of promissory estoppel. The error of the bankruptcy judge was the failure to recognize that an equitable principle should not be applied to reach an inequitable result. If there were no bankruptcy, and if Hedged, Inc. had not made the subject payments to Hannahs, would any court require Hedged, Inc., to make such payments knowing that the judgment could only be satisfied by using funds obtained from other investors through fraudulent inducement? The answer is obvious. Because Hannahs had no legal or equitable right to require payment of these false "earnings," he gave no value in exchange for the payments and the trustee is entitled to recover those payments made within one year of the bankruptcy filing.

Having determined that the trustee is entitled to recover all four of the payments made to the defendant in the one year preceding the bankruptcy filing under 11 U.S.C. § 548(a), it is not necessary to consider the trustee's claims under 11 U.S.C. § 547.

■ The trustee also claimed, in the fifth claim for relief, that under the partnership agreement he, as trustee for the debtor limited partnerships, may recover distributions received by the limited partners in excess of their contributions and/or the value of their capital account. In essence, that would be a recovery of all payments over and above the $120,000 capital contribution made by Hannahs to one partnership. In making this claim, the trustee of the partnership debtor contends that it is not necessary to identify the particular partnership involved because the bankruptcy court consolidated all of the partnerships upon a determination that the assets had been co-mingled and there was inadequate separate accounting for the partnerships.

The legal basis for the claim is the Uniform Limited Partnership Act as adopted in Colorado. The bankruptcy judge rejected this claim as pleaded under the 1981 version of the Act, C.R.S. § 7–62–101, *et seq.*, because the limited partnership to which the defendant subscribed was not formed under that statute and there was no evidence that it ever elected to come under it. The bankruptcy judge further ruled that the defendant did not consent to having the issue tried under the 1931 version of the law, codified at C.R.S. § 7–61–101, *et seq.* He went on to conclude that even if the 1931 law applies, the trustee failed to prove his claim.

Apparently, the bankruptcy judge believed that the particular partnership in which the defendant invested was dissolved as of December 31, 1984, the date given for its termination under the partnership agreement. The bankruptcy judge noted that there was no evidence in the record to establish the financial condition of that particular partnership. Therefore, there was no evidence that it had any liabilities except such as may be owing to the general and limited partners on account of their contributions. Accordingly, under C.R.S. § 7–61–117, there was no showing that the payments were wrongful under partnership law.

Whatever is the appropriate Colorado partnership statute to apply to the limited partnerships formed in this scheme, the claim for recovery based upon enforcement of the partnership agreements must fail because the defendant's participation was induced by fraud. The trustee has cited *Independent Clearing House* with approval and relied on it. As that case correctly points out, the defrauded investors clearly had the right of rescission and restitution permitting recovery of their contributions. See also *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir.1991). To now hold that the trustee as representing creditors of the consolidated partnership estates can enforce partnership law to recover all payments in excess of the contributions to capital in this Ponzi scheme would require the court to be inconsistent in its rulings. It is as inappropriate to enforce this liability on the defendant as a limited partner as it would be to find that he had an enforceable promise to receive the payment of guaranteed earnings as set forth in the partnership papers. This court has rejected that view in holding that the bankruptcy judge erred in his determination that there was a right to such payments under the doctrine of promissory estoppel.

■ It may seem unfair to hold that the recovery in this case is limited to the $20,-162.45 received by Fred Hannahs in the year before the bankruptcy filing, thereby permitting him to retain almost $87,000 more than he contributed when the later investors suffered the loss of their contributions. This court's answer to that apparent injustice is the same as that given by the court in *Independent Clearing House Co.*: the bankruptcy court is a court of limited jurisdiction.

Upon the foregoing, it is

ORDERED that the judgment entered in the bankruptcy court limiting the recovery of the plaintiff Harvey Sender, Trustee, against the defendant Fred Hannahs, to $6,500.79 is reversed and upon remand a new judgment will enter in favor of Harvey Sender, Trustee, and against the defendant Fred Hannahs in the amount of $20,162.45.