Harvey SENDER, Trustee of the Bankruptcy Estates of Hedged–Investments Associates, Inc., Hedged–Securities Associates, LP, Hedged–Investments Associates, LP, and Hedged–Investments Associates II, LP, Plaintiff,

v.

William E. SIMON and Baker Family Partnership I, Defendants.

Civ. A. Nos. 93–K–651, 93–K–652.

United States District Court, D. Colorado.

Nov. 23, 1994.

Bonnie A. Bell, Katch, Sender & Wasserman, Denver, CO, for plaintiff.

James E. Scarboro, David C. Warren, Arnold & Porter, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This case involves alleged transfers in violation of the Colorado Uniform Limited Partnership Act of 1981 (CULPA), Colo.Rev.Stat. §§ 7–62–607 and 7–62–608 (1986). The individual cases originally filed in state court were removed to this court and consolidated by stipulation. Jurisdiction is based on 28 U.S.C. § 1332. The case is before me on the parties' cross-motions for summary judgment. No oral argument has been scheduled nor is it necessary. For the reasons stated below, I grant Defendants' and deny Plaintiff's motions.

### I. Background.

In September 1990, Hedged–Investments Associates, Inc. (HIA, Inc.), Hedged–Investments Associates, Limited Partnership (HIA, LP), Hedged Securities Associates, L.P. (HSA, LP) and Hedged–Investments Associates II (HIA II) were placed in Chapter 7

bankruptcy. Plaintiff Harvey Sender was appointed trustee for all four estates which were ordered to be jointly administered.

Before bankruptcy, HIA, Inc. was the general partner of HIA, LP, HSA, LP and HIA II. James C. Donahue had created all three limited partnerships and was the sole shareholder of HIA, Inc. Donahue represented he conducted an options trading business and his strategies resulted in high returns. The limited partnerships were ostensibly established to invest the partners' funds in common stock and stock options. Although the limited partnerships were formally created, no separate accounting records were maintained and Donahue mingled all funds invested in the partnerships into one checking account maintained in the name of HIA, Inc.

Plaintiff Harvey Sender, upon being appointed as trustee, conducted an investigation which revealed that HIA, Inc., through the acts of Donahue, managed the limited partnerships as a Ponzi scheme and regularly reported false profits. The true source of funds paid to investors as earnings were funds obtained from sale of partnership interests to later investors.

Defendant William E. Simon executed an agreement of limited partnership with HSA, LP on or about June 29, 1988 and on that date made a contribution of $5,000,000.00. On August 21, 1989, Simon made a withdrawal in the amount of $6,220,956.86 represented by a check drawn on a Kidder, Peabody account maintained by HIA, Inc. at Bank One, Columbus, Ohio.

Defendant Baker Family Partnership I ("Baker") executed an agreement of limited

partnership with HSA LP on January 1, 1989 and made a contribution of $1,700,000.00. On August 21, 1989, Baker made a withdrawal in the amount of $1,916,336.23 in the form of a check drawn on the same Kidder, Peabody account maintained by HIA, Inc.

In this action, Sender, on behalf of the consolidated partnership estate, asserts claims under CULPA, specifically Colo.Rev. Stat. §§ 7–62–607 and 7–62–608 (1986),[1] to recover the amounts by which Simon and Baker were paid in excess of their respective contributions.[2]

## II. Standards for Summary Judgment.

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering this motion, I must construe the factual record and reasonable inferences therefrom in the light most favorable to Sender, the non-moving party. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 528 (10th Cir.1994). The mere allegation of a factual dispute will not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-moving party must point to specific facts, "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves," to avoid summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

## III. Merits.

■ Defendants argue Sender, as representative of the "consolidated partnership es-

---

**1.** Section 7–62–607 states: **Limitations on distribution.** A partner may not receive a distribution from a limited partnership to the extent that, after giving effect to the distribution, all liabilities of the limited partnership, other than liabilities to partners on account of their partnership interests, exceed the fair value of the partnership assets.

Section 7–62–608 states: **Liability upon return of contribution.** (1) If a partner has received the return of any part of his contribution without violation of the partnership agreement or this article, he is liable to the limited partnership for a period of one year thereafter for the amount of the returned contribution, but only to the extent necessary to discharge the limited partnership's liability to creditors who extended credit to the

limited partnership during the period the contribution was held by the partnership.

(2) If a partner has received the return of any part of his contribution in violation of the partnership agreement or this article, he is liable to the limited partnership for a period of six years thereafter for the amount of the contribution wrongfully returned.

**2.** This case is readily distinguishable from actions brought by a trustee pursuant to § 547 of the Bankruptcy Act which hold that preference claims are available to a trustee in a Ponzi scheme. *See, e.g., Jobin v. McKay (In re M & L Business Machine Co., Inc.)*, 164 B.R. 657, 663 (D.Colo.1994).

tates" of the Hedged operation cannot assert any claim under CULPA against investors whose participation in the scheme was induced by fraud.

In *Sender v. Hannahs,* 176 B.R. 214, 216 (D.Colo.1994), Judge Matsch reversed the bankruptcy judge's entry in favor of Hannahs on the CULPA claim. Judge Matsch stated:

> Whatever is the appropriate Colorado partnership statute to apply to the limited partnerships formed in this scheme, the claim for recovery based upon enforcement of the partnership agreements must fail because the defendant's participation was induced by fraud. The trustee has cited [*Merrill v. Abbott (In re Independent Clearing House Co.),* 77 B.R. 843 (D.Utah 1987) ] with approval and relied on it. As that case correctly points out, the defrauded investors clearly had the right of rescission and restitution permitting recovery of their contributions. See also *In re United Energy Corp.,* 944 F.2d 589, 596 (9th Cir. 1991). To hold now that the trustee as representing creditors of the consolidated partnership estates can enforce partnership law to recover all payments in excess of the contributions to capital in this Ponzi scheme would require the court to be inconsistent in its rulings. It is as inappropriate to enforce this liability on the defendant as a limited partner as it would be to find that he had an enforceable promise to receive the payment of guaranteed earnings as set forth in the partnership papers. This court has rejected that view in holding that the bankruptcy judge erred in his determination that the [sic.] there was a right to such payments under the doctrine of promissory estoppel.

*Id.*

■ Sender misreads the decision when he states Judge Matsch "erroneously determined that it would be inequitable to require the investor to return the fictitious profits." (Pl.'s Br. Opp. Defs. Mot. Summ. J. & Pl.'s Cross–Mot. Summ. J. at 7.) Judge Matsch's decision that the investor should not return the fictitious profits was not simply based on his sense of fairness. Rather, the conclusion was firmly premised on Judge Matsch's determination that when a partnership is operated as a Ponzi scheme, neither the partners nor the partnership may enforce rights against each other under the partnership agreement or under partnership law. I agree.

■ In *Merrill v. Abbott (In re Independent Clearing House Co.),* 77 B.R. 843, 857 (D.Utah 1987) the court held that the investors had a right of rescission and restitution as a result of the fraudulent inducements of the debtor. The court held, however, each investor could not recover in excess of his investment because "[t]o allow an undertaker to enforce his contract to recover promised returns in excess of his undertaking would be to further the debtors' fraudulent scheme at the expense of other undertakers." *Id.* at 858. Just as, in *In re Independent Clearing House Co.,* the investors had no legal right to enforce payment of their promised returns, so, reasoned Judge Matsch, the trustee had no such right to recover payments made in excess of investors' contributions to capital. The gist of this sound reasoning is that if one party cannot enforce payment as part of an unenforceable contract, the other party cannot compel the return of a payment made pursuant to such contract.

Sender argues the fraudulent acts of Donahue, the sole shareholder of HIA, Inc., the general partner of HSA LP, cannot be attributed to HSA LP. He quotes Colo.Rev.Stat. § 7–60–113 (1986) which states a partnership is liable for the wrongful acts of any partner acting in the course of the business of the partnership or with the authority of his partners. Because, Sender submits, Donahue's acts did not fall within either category, his fraud is not attributable to the HSA LP or any other partnership.[3]

Sender cites four cases interpreting provisions similar to § 7–60–113 as authority that a partnership is not liable for acts of a partner outside the ordinary course of the part-

---

**3.** It is undisputed that HSA LP operated exclusively as part of a Ponzi scheme. Ironically, therefore, even if § 7–60–113 applied, Donahue was apparently acting within the ordinary course of the partnership business.

nership business. In each case cited, however, it was the acts of a particular partner that was at issue, rather than the legitimacy of the partnership itself.[4]

The question here is not whether a partner acted beyond the scope of his authority, but whether a partnership existed to give rise to the provisions of CULPA. I find it did not. Far from being a legitimate contract between consenting parties, HSA LP was part of a Ponzi scheme, i.e. "a fraudulent arrangement in which an entity makes payments to investors from monies obtained from later investors rather than from any 'profits' of the underlying business venture." *Wyle v. Rider & Fam. (In re United Energy Corp.)*, 944 F.2d 589, 590 n. 1 (9th Cir.1991).[5]

Sender argues HSA, L.P. was not void *ab initio*, relying on *Van Andel v. Smith*, 248 F.2d 915 (10th Cir.1957). That case held, however, that a partner whose interest is procured by fraud, although entitled to rescind, remains liable for debts to third parties until the partnership is dissolved. Here, the issue is not whether a defrauded partner is liable to a third party for the debts of a sham partnership but whether he is liable to the sham partnership itself.[6] I conclude he is not. To suggest otherwise would be to further an illegitimate scheme, rather than to enforce a legitimate contract.

As the Colorado Supreme Court has stated: "A partnership can only be created by a contract of the parties and that contract is one whereby they agree to place their money, effects, labor and skill in a *lawful*

business and to divide the profits and bear the loss in certain proportions." *Mann v. Friden*, 132 Colo. 273, 287 P.2d 961, 964 (1955) (emphasis added). Such conditions do not exist here. A partnership was not created and therefore CULPA does not apply.

## IV. Conclusion.

For the aforesaid reasons, Defendants' motion for summary judgment is GRANTED and Sender's cross-motion is DENIED.

---

4. *See Courts of the Phoenix v. Charter Oak Fire Ins. Co.*, 560 F.Supp. 858, 862–63 (N.D.Ill.1983) (limited partners could not be held liable for a general partner's action in setting fire to a building); *Milazo v. Gulf Ins. Co.*, 224 Cal.App.3d 1528, 1538, 274 Cal.Rptr. 632 (Cal.App.2d 1990) (partner's conduct in destroying the partnership's opportunity to remain in business was not "liability as a partner" for the purposes of insurance coverage); *Wales v. Roll*, 769 P.2d 899, 902 (Wyo.1989) (unauthorized acts of a partner in selling the business assets of the partnership did not bind the partnership); *Commonwealth, Pa. Liquor Control Bd. v. Pollock*, 86 Pa.Cmwlth. 168, 484 A.2d 206, 209 (1984) (it was error to revoke partnership licenses on the basis of the misconduct of one partner where such was without the knowledge of the remaining partners).

5. I differ from the decision in *Sender v. C & R Co.*, 149 B.R. 941, 947 (D.Colo.1992) which determined that HIA, LP satisfied the definition of a limited partnership under CULPA and the alter ego doctrine from corporate law did not apply. The court ignored the fundamental illegality of the Ponzi scheme of which HIA, LP formed part.

6. The *Van Andel* court acknowledged this distinction as pivotal. Referring to numerous authorities cited that a person induced by fraud to enter a partnership relationship may declare the partnership agreement void *ab initio*, the court stated: "None of these cases is applicable because none involves the rights of third parties who became creditors between the inception and dissolution of the partnership." *Van Andel v. Smith*, 248 F.2d 915, 918 (10th Cir.1957).